# Exhibit A: Complaint

MICHAEL C. KANE, ESQ.
Nevada Bar No. 10096
BRADLEY J. MYERS, ESQ.
Nevada Bar No. 8857
JOEL S. HENGSTLER, ESQ.
Nevada Bar No. 11597
**THE702FIRM INJURY ATTORNEYS**
8335 West Flamingo Road
Las Vegas, Nevada 89147
Telephone:   (702) 776-3333
Facsimile:   (702) 505-9787
*E-Mail:*   service@the702firm.com

CASE NO: A-23-881461-C
Department 27

**DISTRICT COURT
CLARK COUNTY, NEVADA**

S. C., individually,

    Plaintiff,

vs.

N.W.H. Ltd.,
a Nevada corporation;

SSJV HOSPITALITY LLC,
a Nevada limited liability company;

HILTON FRANCHISE HOLDING LLC,
a Delaware limited liability company;

HILTON WORLDWIDE HOLDINGS, INC.,
a Delaware corporation;

STATIONS CASINOS LLC,
a Nevada limited liability company;

RED ROCK RESORTS, INC.,
a Delaware corporation;

GREGORY STEPHENS, an individual;

SAN MANUEL BAND OF MISSION INDIANS;

ROE CORPORATIONS I-X; and

JOHN DOES I-V

    Defendants.

Case No. :
Dept. No. :

**COMPLAINT
HUMAN TRAFFICKING
under NRS § 41.13965,
NRS § 41.1399,
18 U.S.C. § 1595, and
18 U.S.C. § 2255**
*(Business Court)*

**EXEMPT FROM ARBITRATION:**
**Exemption Claimed:**
**Probable Jury Award Exceeds $50,000**

Plaintiff S.C., by and through her attorneys, MICHAEL C. KANE, ESQ., BRADLEY J. MYERS, ESQ., and JOEL S. HENGSTLER, ESQ. of THE702FIRM, state as follows:

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

1

ALM | LAW.COM RADAR

Case Number: A-23-881461-C

## INTRODUCTION

1. The sex trafficking industry is a worldwide blight of enormous scope and almost unbelievable horror that, at any given time, actively victimizes hundreds of thousands of American women and girls.

2. Sex trafficking is also a problem that could not exist—not on anything like the same scale, at least—absent the willing cooperation of the hospitality industry, in whose rooms the great majority of the victims' suffering occurs.

3. As Plaintiff's experience shows, sex trafficking is not, as it is often described, a "hidden" crime. Rather, it is an *ignored* crime. Coercing someone into having sex for money is neither a quiet process nor an invisible one. Screams, bruises, and long strings of male visitors are just a few of the more obvious signs.

4. Defendants, like most members of the hospitality industry, have intentionally structured their policies and corporate cultures to discourage employees from interfering in traffickers' criminal activities—until and unless those activities affect the bottom line.

5. The hospitality industry's "hear no evil, see no evil, speak no evil" approach, callous as it is, was once arguably lawful. But in 2008, Congress acted to end private-sector collaboration with traffickers by allowing suits against "whoever knowingly benefits" from something they "knew or should have known" was human trafficking.

6. Defendants know that many thousands of women have likely been trafficked through just their own properties since that time.

7. More importantly, Defendants' employees knew that Plaintiff, specifically, was being trafficked, and yet they did nothing—or, in far too many instances, they demanded a cut of the profits for themselves.

8. Defendants thus either knew, or at the very least should have known, that they were profiting from Plaintiff's victimization by taking money from her traffickers.

9. Plaintiff's body may since have escaped from her abusers, but her mind will never again be entirely free of the things she experienced in Defendants' hotel rooms.

10. This action follows.

**JURISDICTION**

11. This Court has jurisdiction over this civil tort action pursuant to NRCP 8(a)(4), NRS 13.040, and/or NRS 41.130 as a substantial part of the acts and omissions giving rise to this case took place in Clark County, Nevada and the amount in controversy exceeds $15,000.

**PARTIES**

12. Plaintiff S.C. (also referred to herein by the fictitious name "**Sarah**") is a natural person who resides in Clark County, Nevada.

13. Due to the sensitive and intimate nature of the issues in this case, Plaintiff asks the Court to enter a protective order under Nevada Rule of Civil Procedure 26(c): (1) permitting her to proceed under a pseudonym; and (2) forbidding the parties from disclosing her identity to third parties without either her consent or the prior approval of the Court.

14. Defendant N.W.H. Ltd. ("NWH") is a revoked Nevada corporation that owned and operated the hotel located at 7100 Cascade Valley Court, Las Vegas, Nevada 89128 from 2004 (the "Hampton Inn") until October 30, 2019.

15. Defendant SSJV HOSPITALITY LLC ("SSJV") is a Nevada limited liability company that has owned and operated the Hampton Inn since October 30, 2019.

16. At all times relevant to this action, the hotel located at 7100 Cascade Valley Court, Las Vegas, Nevada 89128 operated as a Hampton by Hilton franchise under a contract with HILTON FRANCHISE HOLDING LLC.

17. Defendant HILTON FRANCHISE HOLDING LLC ("HFH") is a Delaware limited liability company and a subsidiary of HILTON WORLDWIDE HOLDINGS, INC. HFH is the franchisor that is or was party to the franchise agreements with NWH and SSJV.

18. Defendant HILTON WORLDWIDE HOLDINGS, INC ("HWH" and, collectively with HFH, "Hilton") is a Delaware corporation that owns the Hilton and Hampton Inn brands and is the ultimate corporate parent of HFH.

19. Defendant STATIONS CASINOS LLC ("Stations") is a Nevada limited liability company that operated the Palms Casino Resort (the "Palms") during Plaintiff's trafficking.

20. Defendant RED ROCK RESORTS, INC. ("Red Rock") is a Delaware corporation that owned the Palms during Plaintiff's trafficking. It is the corporate parent of Stations.

21. Defendant SAN MANUEL BAND OF MISSION INDIANS is a tribe that now owns the Palms. Upon information and belief, the tribe assumed the Palms' past liabilities.

22. Defendant GREGORY STEPHENS ("Stephens") is an individual and, on information and belief, a citizen of Nevada.

23. Defendants ROE CORPORATIONS I–V are unidentified business entities that were in some way responsible for employee hiring, training, supervision, retention, or discipline at the Hampton Inn and/or at the Palms during the relevant period.

24. Defendants ROE CORPORATIONS VI–X are unidentified business entities that are successors-in-interest to NWH or otherwise assumed NWH's liability in this matter.

25. Defendants JOHN DOES I–V are unidentified persons who are successors-in-interest to NWH or otherwise assumed or are originally responsible for NWH's liability.

26. When operating the Hampton Inn as a Hilton- and Hampton Inn-branded franchise, NWH and SSJV were required to comply with those brands' "brand standards," which govern everything from how many pillows to put on each bed, to which employees must smile at guests, to whether and how often employee training regarding human trafficking is conducted.

27. On information and belief, at all relevant times Hilton exercised significant control over the hiring and firing decisions made by NWH and SSJV, including by providing the online employment application portal, creating application forms, setting educational and experience standards for particular positions, and even recommending the firing of individuals.

28. As a result, Hilton was a joint employer of all employees of NWH and/or SSJV during the relevant period.

## BACKGROUND

29. Sarah fell under the control of a trafficker in 2019, when she was 16 years old.

30. Between about mid-2019 and mid-2020, several associated traffickers—including Defendant Stephens—coerced Sarah into having sex with adult men in hotel rooms for money.

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

4

ALM | LAW.COM RADAR

31. By far the most common location where Sarah was coerced into having sex was the Hampton Inn located at 7100 Cascade Valley Court, Las Vegas, Nevada 89128.

32. Between mid-2019 and mid-2020, Sarah was coerced into having sex at the Hampton Inn about three times per week on average. Two of the three encounters each week were with the same older man, and the remaining encounters were with a variety of others.

33. Each time Sarah visited the Hampton Inn, she entered through the front entrance while her trafficker waited in a car in the parking lot—often in full view of its security cameras.

34. The front desk and security staff at the Hampton Inn saw Sarah and the same much older man arrive and depart within a short time of one another, twice per week for the entire year.

35. During this yearlong period, Sarah's health and mental state deteriorated severely as the anorexia and drug use fostered by her traffickers took their toll.

36. As the months wore on, Sarah got visibly sicker and sicker. Although she began the year in good health, by the end she weighed just 90 pounds and struggled even to walk.

37. The staff of the Hampton Inn could hardly fail to notice Sarah's youth, her attire, her frequent visits, or her failing health. In fact, the staff did appear to notice her—to the point that Sarah texted her traffickers about the receptionist staring at her, and how scared it made her.

38. Yet, at no point during Sarah's year of suffering did any Hampton Inn employee even ask Sarah what she was doing there. They certainly didn't check her ID, contact her parents, or call the police on her traffickers or the man she was meeting.

39. Instead, Sarah's suffering only ended after one of her traffickers pistol-whipped her on the top of her head, causing permanent damage that required a skin graft.

40. Her severe injury got the attention of the police, and the last of her traffickers was soon indicted, finally giving Sarah the opportunity to try to rebuild her life.

41. The Hampton Inn employees turned a blind eye to Sarah's plight because, on information and belief, it was the unwritten policy of NWH and SSJV to discourage employees from interfering with the commercial sex trade, which made up a substantial portion of the Hampton Inn's business.

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

5

ALM | LAW.COM RADAR

42. On information and belief, NWH and SSJV adopted this unwritten policy in response to Hilton's requirement that its franchises maintain high occupancy rates.

43. On information and belief, NWH and SSJV also adopted this unwritten policy because they understood from Hilton's minimal anti-trafficking training requirements and other lackluster anti-trafficking efforts that preventing trafficking was not a priority.

44. During 2019, while Sarah was being trafficked, she was also exploited at the Palms Casino Resort.

45. On one notable occasion, she and two other underage girls were lured to a "photo shoot" at the Palms by several men whom Sarah had met at a concert.

46. The men somehow set up a video stage inside an accommodation room at the Palms.

47. On information and belief, they were able to do this only because they had the active cooperation of one or more bribed employees.

48. When Sarah and her friends arrived, the men tried to coerce them to participate in a pornographic film.

49. Sarah's friends fled, leaving her alone in a room with multiple strange men who proceeded to sexually assault her and film it.

50. The men later uploaded the video online, intending to profit from ad revenue.

51. Sarah's friends who escaped told Sarah's mother what was happening, and she managed to get the Palms' security to go to the room to intervene.

52. But when they arrived, they simply removed Sarah from the room and ejected her from the premises. They made no attempt to establish whether she was a trafficking victim, seemingly because they were only interested in the Palms' paying customers.

53. On information and belief, security did not remove the men from the room where they had set up the video stage and did not cooperate with the police in prosecuting them.

54. As a result of being trafficked for a year between the ages of 16 and 17, primarily in Defendants' properties, Sarah suffered grievous mental and physical injuries that will be with her for the rest of her life.

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

6

ALM | LAW.COM RADAR

## NATURE OF CAUSES OF ACTION

55. The following allegations apply to all causes of action below.

56. Defendants are liable for their own actions as well as for those of their agents and employees or—in the case of franchisors—their joint employees.

57. All Defendants are also liable for one another's actions as joint venturers based on the natures of their relationships as described above and as will be further shown in discovery; except that in the case of the San Manuel Band of Mission Indians, their liability is only alleged insofar as they purchased the Palms and are responsible for its liabilities.

58. Defendants' actions were willful, malicious, and oppressive and Plaintiff is therefore entitled to punitive or exemplary damages.

59. Each Count is for a sum in excess of $15,000.

60. Plaintiff has incurred general damages such as pain, suffering, grief, invasion of privacy, damage to reputation and the like, and also special damages in the form of lost wages, lost past and future earning capacity, and past and future medical bills.

61. Plaintiff has been required to retain the services of an attorney and is entitled to fees and costs pursuing this action.

62. During and for a time after Plaintiff's trafficking, Plaintiff was under a legal disability in that she was unable to manage her own affairs; was kidnapped or falsely imprisoned, making it impossible for her to assert her legal rights; and/or was intimidated into not asserting her legal rights.

### COUNT I: 18 U.S.C. § 1595 ("TVPRA")
### (AGAINST ALL DEFENDANTS)

63. Plaintiff incorporates each foregoing allegation.

64. Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591(a) and is entitled to bring a civil action under 18 U.S.C. §1595.

65. The Defendants' acts, omissions, and commissions, as described above, constitute a violation of 18 U.S.C. §1595.

66. In particular, Defendants participated in, and facilitated the harboring and advertising of Plaintiff for the purposes of commercial sex induced by force, fraud, or coercion.

67. The Defendants benefited as a result of these acts or omissions by keeping operating costs low, and maintaining the loyalty of the segment of their customer base that seeks to participate in the demand and supply side of sex trafficking.

68. Moreover, the Defendants directly benefitted from the sex trafficking of Plaintiff on each occasion they received payment for rooms, increased brand footing in the industry, received kickbacks from internet usage, or other benefits of value as a result of being harbored at the Defendants' hotels. The actions or omissions alleged in this pleading were the but-for and proximate causes of Plaintiff's injuries and damages.

69. Plaintiff has suffered substantial physical and psychological injuries as the result of being trafficked and sexually exploited at the Defendants' hotels and properties.

**COUNT II: 18 U.S.C. § 2255(A), CHILD ABUSE VICTIMS' RIGHTS ACT ("CAVRA")**

**(AGAINST ALL DEFENDANTS)**

70. Plaintiff incorporates each foregoing allegation.

71. Plaintiff was a "minor" pursuant to 18 U.S.C. § 2255(a) when she was trafficked.

72. Plaintiff was the "victim" of violations of 18 U.S.C. §§ 1589, 1590, and 1591.

73. Plaintiff suffered "personal injury" pursuant to 18 U.S.C. § 2255(a) as a result of those violations.

74. Plaintiff was a "person" who "has not attained the age of 18 years" pursuant to 18 U.S.C. 1591(a)(2).

75. Defendants knew that means of force, threats of force, fraud, coercion, or any combination of those means would be used to cause Plaintiff to engage in a commercial sex act, pursuant to 18 U.S.C. 1591(a)(2).

76. Defendants knowingly "harbored" and/or "maintained" Plaintiff, pursuant to 18 U.S.C. 1590(a)(1), by providing her and her traffickers rooms in hotels affecting interstate commerce where authorities were unlikely to discover the injuries being sustained by Plaintiff.

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

8

ALM | LAW.COM RADAR

77. Defendants knowingly benefited, financially or by receiving anything of value, from participation in a venture that recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and/or solicited Plaintiff to engage in commercial sex acts.

### COUNT III: NRS 41.13965 ("PERSONAL INJURY")
### (AGAINST ALL DEFENDANTS)

78. Plaintiff incorporates each foregoing allegation.

79. Defendants knowingly benefited, financially or by receiving anything of tangible value, from participation in a venture which they knew or should have known has engaged in the sexual abuse or sexual exploitation of Plaintiff.

80. Defendants are liable for knowingly participating in and gaining a benefit from, or for covering up, the sexual abuse or sexual exploitation of Plaintiff, and are liable to Plaintiff for treble damages.

81. To the extent a Defendant is an establishment with more than 175 rooms available, that Defendant still benefited from, upon information and belief, increased foot traffic in its establishment; ATM fees; kickbacks from third parties for selling the Internet and Wi-Fi usage data of johns and pimps; the sale of intoxicating liquors used in the sex trafficking industry.

### COUNT IV: NRS 41.1399 ("ACTION FOR HUMAN TRAFFICKING")
### (AGAINST ALL DEFENDANTS)

82. Plaintiff incorporates each foregoing allegation.

83. Plaintiff is a victim of human trafficking.

84. Defendants caused, were responsible for, or profited from Plaintiff's trafficking.

### COUNT V: NEGLIGENCE OR PREMISES LIABILITY
### (AGAINST ALL DEFENDANTS)

85. Plaintiff incorporates each foregoing allegation.

86. Defendants, and each of them, owed Plaintiff a duty of reasonable care under the circumstances.

87. As described above, Defendants negligently caused, or allowed to arise, unsafe conditions which proximately caused harm to Plaintiff as described above.

## COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (AGAINST ALL DEFENDANTS)

88. Plaintiff incorporates each foregoing allegation.

89. Defendants, by their outrageous and extreme acts described above, intentionally or recklessly inflicted emotional distress upon Plaintiff.

## COUNT VII: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (AGAINST ALL DEFENDANTS)

90. Plaintiff incorporates each foregoing allegation.

91. Defendants, and each of them, owed a duty to exercise due care not to subject Plaintiffs to foreseeable risk of mental, emotional or physical injury.

92. Defendants knew or reasonably should have known that their actions or omissions were likely to result in mental, emotional or physical injury to Plaintiffs.

93. Defendants, and each of them, did negligently inflict extreme mental and emotional distress, indignity, embarrassment and humiliation upon Plaintiffs and did breach that duty to Plaintiffs.

94. Plaintiff's emotional distress became severe only recently, in connection with Rashid getting out of prison, and thus her cause of action accrued at that point.

## COUNT VIII: INVASION OF PRIVACY

### (AGAINST ALL DEFENDANTS)

95. Defendants, and each of them, invaded Plaintiff's privacy and bodily autonomy by collaborating in and causing her to be subjected to forced prostitution.

96. Plaintiff is entitled to damages for Defendants' actions.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment as follows:

a. Awarding Plaintiff all available compensatory damages for each cause of action, including but not limited to past and future medical expenses; past and future lost wages and loss of earning capacity; past and future emotional distress; consequential and/or special damages; all available noneconomic damages, including but not limited to pain, suffering, and loss of enjoyment of life;

b. Disgorgement of profits obtained through unjust enrichment;

c. Restitution;

d. Statutory and/or treble damages, where available;

e. Punitive damages;

f. Attorneys' fees and expenses;

g. The costs of this action;

h. Pre- and post-judgment interest; and

i. Any other relief the Court or jury deems appropriate.

DATED this 13th day of November, 2023.

THE702FIRM

/S/ MICHAEL KANE
_____
MICHAEL C. KANE, ESQ.
Nevada Bar No. 10096
BRADLEY J. MYERS, ESQ.
Nevada Bar No. 8857
JOEL S. HENGSTLER, ESQ.
Nevada Bar No. 11597
8335 West Flamingo Road
Las Vegas, Nevada 89147
*Attorneys for Plaintiff*

ALM | LAW.COM RADAR

## DEMAND FOR JURY TRIAL

Plaintiff by and through her attorneys of record, THE702FIRM, hereby demands a jury trial of all issues in the above matter.

DATED this 13th day of November, 2023.

**THE702FIRM**

/S/ MICHAEL KANE

---
MICHAEL C. KANE, ESQ.
Nevada Bar No. 10096
BRADLEY J. MYERS, ESQ.
Nevada Bar No. 8857
JOEL S. HENGSTLER, ESQ.
Nevada Bar No. 11597
8335 West Flamingo Road
Las Vegas, Nevada 89147
*Attorneys for Plaintiff*

ALM | LAW.COM RADAR