1  Nicole M. Perry *(Pro Hac Vice)*
   JONES DAY
2  717 Texas Street, Suite 3300
   Houston, TX 77002
3  Telephone: +1.832.239.3939
   Email: nmperry@jonesday.com
4
   Bethany K. Biesenthal *(Pro Hac Vice)*
5  Allison L. McQueen *(Pro Hac Vice)*
   JONES DAY
6  110 North Wacker Drive, Suite 4800
   Chicago, IL 60606
7  Telephone: +1.312.782.3939
   Email: bbiesenthal@jonesday.com
8         amcqueen@jonesday.com

9  Jennifer L. Braster
   Nevada Bar No. 9982
10 Naylor & Braster
   10100 W. Charleston Blvd., Suite 120
11 Las Vegas, NV 89135
   Telephone: +1.702.420.7000
12 Email: jbraster@nblawnv.com

13 *Attorneys for Defendant Hilton Franchise Holding LLC*

14

15 **UNITED STATES DISTRICT COURT**
   **DISTRICT OF NEVADA**

16

17 | | |
|---|---|
| **JANE DOE (S.C.), a pseudonym,** | Case No. 2:23-cv-02037-APG-DJA |
| Plaintiff, | |
| v. | **DEFENDANT HILTON FRANCHISE HOLDING LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT UNDER RULE 12(B)(6)** |
| **HILTON FRANCHISE HOLDING LLC, et al.,** | |
| Defendants. | |
| | **ORAL ARGUMENT REQUESTED** |

# INTRODUCTION

Plaintiff's Opposition, ECF No. 45 ("Opp."), confirms that this Court should dismiss Plaintiff's TVPRA claims against Hilton Franchise Holding LLC ("Hilton") for many independent reasons. For the most part, Plaintiff fails to engage at all with Hilton's arguments or cases. On the facts, she ignores her own allegations and theories, recites or even paraphrases boilerplate allegations, and attempts to amend her complaint in her response brief. On the law, she cites irrelevant or unpersuasive cases, confuses the relevant issues and elements, and explores irrelevant tangents ranging from disgorgement to the last-antecedent rule.

*First*, Plaintiff agrees Hilton can be *directly* liable under the TVPRA only if Hilton, among other things, participated in a venture that itself perpetrated her trafficking. Opp. 13. But Plaintiff expressly abandons the only venture theory that she even arguably pleaded in her complaint (*i.e.*, participation in a sex-trafficking venture). *Id.* Citing inapposite case law, Plaintiff now says that she is alleging a "commercial venture" between Hilton (a franchisor) and the Hampton Inn (a franchisee), premised on "renting rooms." But that is not a venture because there is no well-pleaded allegation that either Hilton or the Hampton Inn *criminally trafficked* Plaintiff, much less that Hilton *itself* actually or constructively knew about her alleged trafficking. Indeed, the only ("upon information and belief") allegations about Hilton's knowledge that she advances are purely speculative and patently unreasonable. First Amended Complaint, ECF No. 36 ("FAC"), ¶¶ 95–96 (speculating that "it is likely that at least one Hilton inspection overlapped with one of" Mohammad A.'s and [Plaintiff's] "appointed meetings" and that "on at least one occasion Hilton employees were present at the Hampton Inn . . . when [Plaintiff] arrived for one of her [] encounters"); Hilton's Motion to Dismiss, ECF No. 40 ("Hilton's MTD") at 3–4, 8–10. Plaintiff's argument that Hilton can be *indirectly* liable fares no better, as she fails to cite, much less distinguish, any of the authorities on which Hilton relied in its motion to dismiss. At bottom, Plaintiff has not pled any non-conclusory facts to support an agency or joint-employer relationship. These defects and others doom her federal claims, as well as her state-law claims.

*Second*, even if the Court were to reach the merits and treat Hilton and the Hampton Inn as one and the same, Plaintiff's claims would fail as a matter of law. Plaintiff fails to grapple with

Hilton's arguments that her allegations regarding even the Hampton Inn's supposed knowledge are far too conclusory or otherwise implausible. Indeed, she merely paraphrases boilerplate allegations over and over again, all while ignoring the cases that reject such allegations as insufficient.

Hilton unequivocally condemns trafficking. And Plaintiff should of course continue to prosecute her case against the individual defendants who allegedly trafficked her. But Hilton simply does not belong as a defendant in this case. This Court should grant Hilton's motion.

## ARGUMENT

There are no factual allegations that would allow the Court to draw a reasonable inference that *Hilton itself* is liable for the alleged claims (most of which are recitations of legal elements). The factual allegations instead focus mostly on the Hampton Inn staff, but there are also no factual allegations that would allow the Court to impute the Hampton Inn staff's conduct or knowledge to Hilton. Alternatively, even if the Court viewed Hilton and the Hampton Inn as one and the same, Plaintiff's claims are easily disposed of, not the least because the Hampton Inn's staff did not perpetrate (much less should they have known about) sex trafficking. For either reason, the Court should dismiss the Complaint against Hilton with prejudice.

**I.   Dismissal Is Warranted Because There Are No Well-Pleaded Allegations Against Hilton Itself.**

The most straightforward path to dismissal continues to be that the FAC does not plausibly allege that Hilton itself is liable, directly or indirectly, under any Count.

**A.   There Are No Well-Pleaded Allegations of Direct Liability Against Hilton.**

Taking direct liability first, Hilton is a Delaware corporation based in Virginia. *See* FAC ¶ 17. Plaintiff does not plausibly allege that Hilton itself directly committed any of her claimed legal violations. Hilton's MTD 6–14.

**1.   The TVPRA Claim (Count I)**

Plaintiff ("[w]ith apologies") disclaims her aiding-and-abetting theory. Opp. 3 n.1. That means the only direct claim against Hilton under the TVPRA is based on its alleged ***participant liability*** (or "beneficiary" liability). *Id.* at 12. As Hilton explained, Plaintiff's participant claim against Hilton fails for two reasons: Plaintiff does not plausibly allege that Hilton knowingly

1  participated in any venture to begin with; and she does not plausibly allege that Hilton itself knew
2  or should have known that a purported venture criminally trafficked Plaintiff. *Id.* at 7–10.

3  **A.** In response, Plaintiff offers almost nothing on *participation in a venture*. Opp. 13–14.
4  Indeed, she does not cite a single paragraph from her complaint. That is unsurprising given that
5  she *deleted* her participation allegations with respect to the TVPRA. *Compare* FAC ¶ 132, *with,*
6  *e.g.*, ECF No. 1-1, Compl. ¶ 66. She *now* improperly claims in her opposition brief that she has
7  alleged a "commercial venture" "between Hilton and the Hampton Inn Defendants." Opp. 13. But
8  she has alleged no such thing, instead framing her (state-law-claim) venture as a *sex-trafficking*
9  venture. *See* FAC ¶¶ 132–133 (alleging that a "venture" with traffickers "has engaged in the sexual
10 abuse and exploitation of Plaintiff"); Hilton's MTD 8 (addressing sex-trafficking venture theory).
11 Because Plaintiff has abandoned the one theory that she even arguably pled, the Court should
12 dismiss her participant theory. *See Olympic Tug & Barge, Inc. v. Lovel Briere LLC*, 668 F. Supp.
13 3d 1165, 1177 (W.D. Wash. 2023) (citing cases) (dismissing party's claim because it "fail[ed] to
14 allege sufficient factual matter" and rejecting its attempt to "amend its pleading via its responsive
15 brief"); *Mendoza v. In-N-Out Burgers*, 2020 WL 10442992, at *3 (D. Nev. Nov. 23, 2020) (similar).

16 Even if Plaintiff could amend her Complaint in her response, this claim would utterly fail.
17 As for participation, "the most important component is the [specific defendant's] own conduct."
18 *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1142 (9th Cir. 2022). For example, "[a] complaint against
19 a website that merely alleges trafficking by the website's users—without the participation of the
20 website—would not survive." *Id.* Instead, to allege a defendant "knowingly benefit[ed] . . . *from*
21 *participation in a venture*," a plaintiff must establish that the defendant participated in a *common*
22 enterprise involving risk and potential profit that, in turn, trafficked the plaintiff. *See Doe #1 v.*
23 *Red Roof Inns*, 21 F.4th 714, 723 (11th Cir. 2021); Hilton's MTD 7–8. In short, that requires *actual*
24 *knowledge* of the common purpose *and* that the venture itself has committed the trafficking. *See*
25 *Red Roof Inns*, 21 F.4th at 725 (explaining that "the venture in which the defendant participated
26 and from which it knowingly benefited must have violated the TVPRA as to the plaintiff"); *see*
27 *also Does 1-6*, 51 F.4th at 1142.

28

In these respects, the D.C. Circuit's recent decision in *Doe 1 v. Apple*, __ F. 4th __, 2024 WL 925889 (D.C. Cir. Mar. 5, 2024), is instructive. There, the court endeavored to reconcile the circuit cases that analyze the TVPRA's meaning of that term. Beginning with the language, the Court reinforced that "participation in a venture" means knowingly "taking part or sharing in an enterprise or undertaking that involves danger, uncertainty, or risk, and potential gain," which, in turn, "engaged in" a violation of the TVPRA. *Id.* at *8, *10. In holding that the plaintiffs failed to state a claim under a forced-labor theory, the D.C. Circuit held that merely "conduct[ing] business with [*others*] who facilitate[] forced labor," even on an ongoing basis, does not suffice under a venture theory. *Id.* at *8. In other words, a defendant must "t[ake] actions beyond an arms-length exchange with [an] abuser," such as a supply or other market relationship. *Id.* at *9. The court thereby distinguished *Apple* and *Red Roof Inns*, *id.* & n.6, from other extreme fact patterns. For example, in *Ricchio*, the court recounted, a hotel had expressly "acknowledged the illegal purpose of [a] relationship, shared the benefits and the risk," and even visited the rented room and "'demand[ed] further payment'" from the trafficker while the victim pleaded for help. *Id.* at *9 (quoting *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017)). And in *G.G.*, the court continued, a company knowingly "provided direct support, specific business advice, and productivity enhancing software" to a trafficker's own website, "thereby 'facilitat[ing] the growth of . . . a business . . . whose business model was built upon systematic and widespread violations of [the TVPRA].'" *Id.* (quoting *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 560 (7th Cir. 2023)).

Here, Plaintiff's commercial venture allegations are much like those in *Apple*—and look nothing like those in *Ricchio* or *G.G.* After all, Plaintiff points to nothing more than "renting rooms to her abusers"—which is to say "an arms-length exchange with [an] abuser" of the type that does not qualify under the TVPRA. *See Apple*, __ F.4th __, 2024 WL 925889, at *1. Were the rule otherwise, innocent market participants would in essence face strict liability for engaging in commercial relationships or transactions. That would be contrary to the most fundamental precepts of corporate law. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998).

All while ignoring this federal circuit authority, Plaintiff avers that Hilton participated in a venture because it "should have known" of Plaintiff's trafficking and "failed to 'take adequate steps

1  to train staff in order to prevent its occurrence.'" Opp. 13 (citing cases mostly from the same judge
2  in the Southern District of Ohio). But that improperly conflates the TVPRA's elements. The
3  *participation in a venture* requirement is separate from a plaintiff's burden to establish that the
4  defendant *knew or should have known* that the venture (if any) criminally trafficked her. *See G.G.*,
5  76 F.4th at 553 (separating elements); *Doe #1*, 21 F.4th at 723 (same). The latter does not apply to
6  the antecedent question whether the defendant ever knowingly participated in a venture in the first
7  place. And here again, Hilton did not plausibly participate in any venture with the Hampton Inn or
8  otherwise that actually criminally trafficked Plaintiff.

9  **b.** As a separate ground for dismissal, Plaintiff also fails to plausibly allege that Hilton
10 itself had *actual or constructive knowledge* of her trafficking at the Hampton Inn. Hilton's MTD
11 8–10.

12 In response, Plaintiff does not even contest Hilton's argument that her allegations are
13 entirely conclusory and speculative. *Compare* Opp. 13–14, *with* Hilton's MTD 8–10; *see supra* p.
14 1 (citing FAC ¶¶ 95–96). Nor does she respond to a single case cited by Hilton. Instead, as to
15 Hilton, Plaintiff simply declares (without FAC citations) that "Hilton 'was on notice about the
16 prevalence of se [sic] trafficking at its hotels.'" Opp. 13. She also points to one of her abuser's
17 "suspicious pattern of renting rooms twice a week." *Id.* But not even Plaintiff believes that *Hilton*
18 (as the franchisor) rented out the Hampton Inn's rooms, much less to her abuser. *See* FAC ¶ 59
19 (alleging only that "the employees and managers at the Hampton Inn continued to rent rooms to
20 Mohammad A"). All she does is engage in pure ("upon information and belief") speculation about
21 what Hilton "likely" saw in "one" inspection. FAC ¶¶ 95–96. This is woefully inadequate to
22 charge Hilton (as a franchisor) with actual or constructive knowledge of sex trafficking at the
23 Hampton Inn (a franchisee), much less *her* trafficking there, as Hilton has already explained.
24 Hilton's MTD 8–9 (citing cases).

25 Finally, Plaintiff's conflation of Hilton with the Hampton Inn in the direct-liability context
26 misses the mark. For example, Plaintiff asserts that "a company knows what its employees know."
27 Opp. 13. And she says "a company's failure to implement policies sufficient to combat a known
28 problem in its operations counts." *Id.* at 14. But, as even she alleges in her Complaint, Hilton itself

1  did not even employ the Hampton Inn's employees. *See, e.g.*, FAC ¶ 16 (noting that "at all times
2  relevant, one of NWH or SSJV was the employer of all front desk, security, housekeeping, and
3  other staff working at the hotel"); *id.* ¶ 57 (noting that the Hampton Inn's managers were
4  responsible for "overseeing the Hampton Inn's front desk, security, and housekeeping staff"); *id.*
5  ¶¶ 69, 72, 78 (asserting that Hilton merely "recommends compensation for employees," "provides
6  its franchisees with sample employment contracts," and reserves "authority to require franchisees
7  to hire a hotel management company . . . ."). And Hilton's own "operations" aren't at issue. *See,*
8  *e.g.*, *id.* ¶¶ 14–17 (alleging instead that SSJV and NWH "owned and operated the Hampton Inn" as
9  a franchise). *See also infra* Part II (addressing agency allegations).

### 2. The Masha's Law Claim (Count II)

11  The foregoing analysis disposes of Plaintiff's Masha's Law claim as well. Hilton's MTD
12  11. Plaintiff appears to agree that if this Court dismisses the TVPRA claim against Hilton, it would
13  necessarily dismiss the CAVRA claim, as well. Opp. 14 (noting the "claim merges"). Plaintiff
14  offers no real response to Hilton's substantive argument that this claim would in all events need to
15  be dismissed against Hilton, instead gesturing at another Southern District of Ohio opinion that
16  does not actually grapple with the question presented. The text of the statute is clear—Section
17  2255(a)'s exclusive list of *criminal* statutory violations does not include Section 1595(a) and its
18  civil remedy. *See, e.g.*, *Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F. Supp. 2d 1337, 1340
19  (S.D. Fla. 2012) (confirming that the "predicate[s]" in Section 2255(a) are "criminal offenses").
20  And contrary to Plaintiff's contention, Opp. 14, she has not alleged (direct) perpetrator liability
21  against Hilton itself. *See* Hilton's MTD 7 (citing, *e.g.*, FAC ¶¶ 115–116). Thus, this claim fails,
22  too.

### 3. The State-Law Claims (Counts III through VI)

24  As for Plaintiff's remaining state-law claims, they are easily disposed of on numerous
25  independent grounds. Hilton's MTD 11–14.
26  *First*, Plaintiff does not address Hilton's argument that *all* of her state-law claims fail to
27  satisfy federal pleading principles and should all be dismissed for that reason alone. *Id.* at 11.
28  Instead, she suggests that if her federal claims are dismissed, the Court "should remand the

- 6 -   Case No. 2:23-cv-02037-APG-DJA
        Def.'s Reply in Support of Motion to Dismiss

1  remaining claims to state court." Opp. 15. It should not. In *Arroyo v. Rosas*, 19 F.4th 1202, 1215 (9th Cir. 2021), the Ninth Circuit cautioned that district courts should not reflexively decline supplemental jurisdiction. Instead, "the focus is on whether the consequences of either retaining or declining supplemental jurisdiction in a given case will promote the values of 'economy, convenience, fairness, and comity.'" *Id.* at n.8.[1] For example, where "it is obvious how the claims should be decided," the court should dismiss the claims on their merits. *See id.* (quoting *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007)). And here, it is "obvious" that the state-law claims fail.

*Second*, Plaintiff does not contest that *all* of her state-law claims also fail to allege proximate causation and should also be dismissed for that reason alone. Hilton's MTD 11–12. While going on a detour into "disgorgement of profits," Plaintiff avers that "a proximate cause requirement" does not apply to her claim under N.R.S. 41.1399. Opp. 16. Of course, that operates as a concession that her *other* claims *are* subject to a proximate-cause requirement, and a waiver of the issue. *See Heraldez v. Bayview Loan Serv., LLC*, 2016 WL 10834101, at *3 (C.D. Cal. Dec. 15, 2016), *aff'd*, 719 F. App'x 663 (9th Cir. 2018). In all events, though, the Nevada Supreme Court has squarely held that "[t]he doctrine of proximate cause, as a limit on liability, applies to *every* tort action." *State v. Eaton*, 710 P.2d 1370, 1376 (Nev. 1985) (emphasis added), *overruled on other grounds by State ex rel. Dep't of Transp. v. Hill*, 963 P.2d 480 (Nev. 1998). So all of Plaintiff's claims must be dismissed on this basis alone, as well.

*Third*, at least Counts V and VI are time-barred. Hilton's MTD 12. In response, Plaintiff attempts to invoke "equitable tolling." Opp. 17–18. The problem for Plaintiff, however, is that *she never pled* this theory. "The burden of alleging facts which would give rise to tolling falls upon the plaintiff." *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993). That requirement applies equally to "equitable tolling." *In re Cap. Options, LLC*, 719 F. App'x 609, 612 (9th Cir. 2018). So here again, Plaintiff's claims must be dismissed.

---

[1] Plaintiff invokes an unpublished decision from the Southern District of California. But in that case, "fifteen causes of action based purely on novel state law" remained after dismissal of the federal claims. *Paselio v. Fresenius Med. Care Holding, Inc.*, 2024 U.S. Dist. LEXIS 54306, at *6 (S.D. Cal. Mar. 26, 2024).

*Finally*, and again, each of the claims fail for other reasons. Hilton's MTD 12–14.

**Personal Injury (Count III)**. Plaintiff does not contest that her claim under N.R.S. 41.13965 should rise and fall with her TVPRA participation claim (assuming she pled one). Opp. 15; Hilton's MTD 12–13. The Court should thus dismiss this claim (rather than decline jurisdiction) for the reasons expressed above, *supra*, *Arroyo*, 19 F.4th at 1205. Plaintiff does offer six paragraphs on the "last antecedent rule." Opp. 15–16. It's not clear why, however, as Hilton did not raise an argument on the 175-room requirement. Hilton's MTD 12–13. While the analysis seems to be wrong, Hilton sees no reason to reply to an argument it did not raise.

**Human Trafficking (Count IV)**. Plaintiff does not grapple with Hilton's cited caselaw that makes clear that N.R.S. 41.1399 requires "specific intent." *Ford v. State*, 262 P.3d 1123, 1127 (Nev. 2011); Hilton's MTD 13. Nor does she explain why or how Hilton (as a mere franchisor) could have even known about her trafficking, why or how Hilton could have ever caused it, or why or how Hilton could have ever profited from it. Hilton's MTD 13. That all amounts to a waiver. *Heraldez*, 2016 WL 10834101, at *3. What she *does* offer is a request for the court not to dismiss her one-line "disgorgement of profits" request. Opp. 16–17 (citing FAC, Prayer for Relief, subparagraph b). But the only Nevada case she cites *rejected* disgorgement of profits "for a private plaintiff" where that relief was not "statutorily authorized." *See Mitchell v. Nype*, 517 P.3d 905, n.3 (Nev. 2022). Plaintiff avers that *Mitchell* is "unpublished" and "not binding," but the Ninth Circuit has had no problem "predict[ing] that the Nevada Supreme Court would adhere to its unpublished rulings on [a] disputed point." *E.g.*, *U.S. Bank, N.A. v. White Horse Estates Homeowners Ass'n*, 987 F.3d 858, 863 (9th Cir. 2021). The statute does not authorize disgorgement, but even if it did, "Nevada recognizes that equitable remedies are generally not available where the plaintiff has a full and adequate remedy at law." *Korte Constr. Co. v. State ex. Rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 492 P.3d 540, 541 (Nev. 2021). And here, Plaintiff has not even attempted to explain, much less plead, why her legal remedies would be inadequate such that an equitable remedy like disgorgement would ever be necessary. *See id.*

**Negligence or Premises Liability (Count V)**. Plaintiff appears to have abandoned any direct-liability theory against Hilton itself for negligence or premises liability. Opp. 19 (asserting

1  that Hilton is only "liable based on [] agency theories").

2  **Intentional Infliction of Emotional Distress (Count VI).** Plaintiff also appears to have
3  abandoned any direct-liability theory against Hilton itself for intentional infliction of emotional
4  distress. *Id.* (asserting that Hilton is only "liable based on [] agency principles").

### B. There Are No Well-Pleaded Allegations of An Agency Relationship Between Hilton and the Hampton Inn.

As Hilton explained in its motion to dismiss, Plaintiff failed to allege facts sufficient to support an agency or joint-employer relationship that might be able to trigger vicarious liability. Hilton's MTD 14–18 (citing, *e.g.*, *Doe (K.B.) v. G6 Hosp., LLC*, 2023 WL 8650785, at *7–8 (N.D. Ga. Dec. 14, 2023); *Hunter Mining Labs., Inc. v. Mgmt. Assistance, Inc.*, 763 P.2d 350, 352 (Nev. 1988)). On this score, Plaintiff fails to cite (much less distinguish) any of the cases on which Hilton relied. *Compare* Hilton's MTD 14–18 (citing more than a dozen cases), *with* Opp. 10–12 (citing none of the same). Plaintiff does not challenge or distinguish the holdings in cases like *K.B.* or *Hunter Mining*. Opp. 10–12. And even while asserting "federal common law" applies, she does not cite the Restatement (Third) of Agency, much less attempt to apply its rules. *Id.*

Instead, Plaintiff largely relies on (yet another) Southern District of Ohio case (applying Ohio law) and cases from the Illinois Court of Appeals, Indiana Court of Appeals, Connecticut Superior Court, and Texas Court of Appeals (all applying their own state laws). The only remotely relevant case that she invokes to support her claim is *T.P. v. Wyndham Hotels & Resorts, Inc.*, 2022 U.S. Dist. LEXIS 217315, at *36 (S.D. Ohio Dec. 1, 2022). But even that case does not support her cause. For whatever reason in that case, the Court applied Ohio law and (wrongly) rejected the day-to-day control theory that Plaintiff admits applies here. *See id.* at *11–12 (citing "brand quality standards" and the like). Hilton rests on the numerous authorities, including the Restatement (Third) of Agency, cited in its motion to dismiss. Hilton's MTD 14–18. Just like in cases like *K.B.*, "none of the facts alleged appear to exceed that of a typical franchise agreement arrangement" and thus do not "adequately allege[] an agency relationship." 2023 WL 8650785, at *8 (noting further that allegations relating to "control" were too conclusory or otherwise implausible). No amount of boilerplate allegations can make Plaintiff's allegations adequate. *See* Opp. 11 (paraphrasing

conclusory allegations in Complaint).

In fact, Plaintiff's *own allegations refute* an agency relationship—another point to which she does not respond. Hilton's MTD 17; *see, e.g.*, FAC ¶ 16 (noting that "at all times relevant, one of NWH or SSJV was the employer of all front desk, security, housekeeping, and other staff working at the hotel"); *id.* ¶ 57 (noting that the Hampton Inn's managers were responsible for "overseeing the Hampton Inn's front desk, security, and housekeeping staff"); *id.* ¶¶ 69, 72, 78 (asserting that Hilton merely "recommends compensation for employees," "provides its franchisees with sample employment contracts," and reserves "authority to require franchisees to hire a hotel management company . . . ."). These are all further confirmations that the franchise relationship is an ordinary one. *See K.B.* 2023 WL 8650785, at *7–8.

Finally, Plaintiff's "joint employer" theory fails for the same reasons. *See* Hilton's MTD 17–18 (citing cases). In fact, Plaintiff's own allegation makes it fail: "**one of NWH or SSJV** was the employer of all front desk, security, housekeeping, and other staff working at the hotel." FAC ¶ 16 (emphasis added). Same with Plaintiff's own Ninth Circuit case (Opp. 12), as she does not allege facts supporting that Hilton: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, [or] (4) maintained employment records." *Ray v. Los Angeles Cnty. Dep't of Pub. Soc. Servs.*, 52 F.4th 843, 848 (9th Cir. 2022). Indeed, she alleges the opposite. *See, e.g.*, FAC ¶¶ 16, 57, 69, 72, 78.

## II. Even If Hilton Were Indirectly Liable for the Hampton Inn, Plaintiff's Claims Fail As a Matter of Law.

Although the Court can stop here, Hilton notes that, even if the Court treated Hilton as the Hampton Inn itself—*i.e.*, even if Hilton were indirectly liable for the activities of the Hampton Inn—Plaintiff fails to state any federal or state claim for relief against the Hampton Inn. Having failed to do so, Plaintiff also necessarily fails to state a claim for relief against Hilton based on an indirect-liability theory. Hilton's MTD 18–20.

**TVPRA Claim (Count I)**. Plaintiff has no viable claim against the Hampton Inn, either.

***Perpetrator Liability***. As an initial matter, Plaintiff *erroneously* says that she pleaded a

direct "perpetrator" (Section 1591(a)(1)) theory against the Hampton Inn. As Hilton explained in its motion to dismiss, she plainly did not. Hilton's MTD 7; *compare, e.g.*, FAC ¶¶ 115–116, *with, e.g.*, ECF No. 1-1, Compl. ¶ 66; *see* ECF No. 12, Hilton's Motion to Dismiss Original Complaint at pp. 8–10 (addressing perpetrator theory). But even if she could amend her complaint yet again in her response brief, the perpetrator claim against the Hampton Inn would fail.

This is a very serious claim. Plaintiff is essentially asserting that the Hampton Inn committed a federal crime (punishable by up to life in prison) by *trafficking* her. *See* 18 U.S.C. § 1591(a)(1). She has no good-faith basis for this claim. A hotel does not "harbor" every guest that rents a room. Again, were the rule otherwise, hotels would face strict liability. In the context of Section 1591(a)'s list of unlawful acts, "harbor" means "to receive secretly and conceal." *Harbor*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/harbor; *see also Harbor*, Dictionary.com, https://www.dictionary.com/browse/ harbor ("to conceal; hide"); *United States v. Vargas-Cordon*, 733 F.3d 366, 382 (2d Cir. 2013) (holding that "harbor[]" in another statute contains an element of concealment); *cf. Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 575 (1995) ("a word is known by the company it keeps"). Yet Plaintiff's own strained attempts to identify some way in which the Hampton Inn might have even known about her trafficking demonstrate that the Hampton Inn was not knowingly "concealing" or "hiding" Plaintiff, much less causing her to engage in commercial sex through "force, fraud, or coercion." 18 U.S.C. § 1591(a). The Hampton Inn did not criminally traffic Plaintiff (and obviously Hilton did not either).

**Participant Theory**. Plaintiff also does not plausibly allege that the Hampton Inn participated in any venture to begin with any more than it does as to Hilton. *Supra* pp. 3–5. In addition, there also is no well-pleaded basis to infer that the Hampton Inn "knew or should have known" that a purported venture criminally trafficked Plaintiff. *Supra* pp. 5–6. That is because there is no well-pleaded basis in the Complaint to infer that the Hampton Inn knew or should have known that Plaintiff had "not attained the age of 18 years." 18 U.S.C. § 1591(a)(1). Nor is there any well-pleaded basis to infer that the Hampton Inn knew or should have known that Plaintiff herself would be "caused to engage in a commercial sex act." *Id.*; *see* Hilton's MTD 18–20.

In response, Plaintiff does not respond to a single argument that explains why the Complaint

fails as to the Hampton Inn. *Compare* Hilton's MTD 18–20, *with* Opp. 13. Instead, she paraphrases her own conclusory allegations. Opp. 13. That is not sufficient. In short, because Plaintiff fails to plausibly allege a TVPRA claim against the Hampton Inn, she cannot state such a claim indirectly against Hilton through the Hampton Inn.

**Remaining Claims (Counts II through VI)**. For all the reasons Plaintiff's *perpetrator* and *participant* theories under Section 1591(a) fail, *see supra*, her piggyback claim under Masha's Law fails as well. *Supra* p. 6. And Plaintiff's state-law claims fail against the Hampton Inn for all the same reasons that they fail against Hilton. *Supra* pp. 6–9.

In sum, even if Hilton and the Hampton Inn were one in the same, the allegations against the Hampton Inn (and thus Hilton) are insufficient to state a plausible claim for relief.

## CONCLUSION

For these reasons, the Court should dismiss the Complaint against Hilton with prejudice.

Dated: April 4, 2024                                   Respectfully submitted,

*/s/ Nicole M. Perry*
Nicole M. Perry *(Pro Hac Vice)*
JONES DAY
717 Texas Street, Suite 3300
Houston, TX 77002
Telephone: +1.832.239.3939
Email: nmperry@jonesday.com

Bethany K. Biesenthal *(Pro Hac Vice)*
Allison L. McQueen *(Pro Hac Vice)*
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: +1.312.782.3939
Email: bbiesenthal@jonesday.com
         amcqueen@jonesday.com

Jennifer L. Braster
Nevada Bar No. 9982
Naylor & Braster
10100 W. Charleston Blvd., Suite 120
Las Vegas, NV 89135
Telephone: +1.702.420.7000
Email: jbraster@nblawnv.com

*Attorneys for Defendant Hilton Franchise Holding LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2024, a copy of the foregoing was filed using the CM/ECF system, which will effectuate service on all counsel of record.

/s/ *Nicole M. Perry*
Nicole M. Perry

*Attorney for Defendant Hilton Franchise Holding LLC*