# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JANE DOE (G.N.C.),

                           Plaintiff,                             23-cv-7980 (PKC)

            -against-                                   OPINION AND
                                                                    ORDER

UNIQUEST HOSPITALITY, LLC, et al.,

                           Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff, proceeding with the pseudonym Jane Doe, alleges that she was a victim of sex trafficking at three hotels in New York state—the Embassy Suites Buffalo, the Hotel Pennsylvania in New York City, and the Boulevard Inn in Amherst, New York. (ECF 113, Second Amended Complaint ("SAC") ¶¶ 38, 40-42.) The Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1591, prohibits the sex trafficking of children in all circumstances and the sex trafficking of adults by force, fraud, or coercion. A violation of section 1591 carries a mandatory minimum sentence of ten years and a maximum sentence of life imprisonment. 18 U.S.C. § 1591(b). In addition to the criminal prohibition, the TVPRA provides sex trafficking victims with a civil remedy against the person who committed the criminal offense, i.e. the "perpetrator," and any beneficiaries of the offense, defined as "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]." 18 U.S.C. § 1595(a).

Doe alleges that her trafficker moved her among hotels in New York state, including the three to which one or more named defendants have a connection, and used coercion and violence to cause her to perform commercial sex services for his financial benefit. (Id. ¶ 39.) Doe brings claims against eight defendants, six of whom have moved to dismiss for failure to state a claim.[1]

Doe alleges "perpetrator" liability against five of the moving defendants and beneficiary liability against all six moving defendants. The SAC is 66 pages in length and contains 224 paragraphs, giving the superficial appearance of a pleading likely to contain detailed allegations of liability on the part of each defendant. But the pleading repeatedly blurs lines between defendants, lumping them under groupings like the "ES Defendants" (three defendants) or the "Hotel Pennsylvania Defendants" (three defendants). It makes the following sweeping collective allegations against all eight defendants: ". . . Each Defendant developed a continuous business relationship with sex traffickers . . . by providing hotel rooms and related services . . ." (SAC ¶ 8.) The SAC identifies 16 "red flag" indicators of sex trafficking. (Id. ¶ 50.) But it fails to plausibly allege how or why a particular entity observed the "red flags" that may have been apparent at certain times at a location. The trafficking of Doe allegedly occurred over a three-month period at the Embassy Suites Buffalo (September to November, 2016) and one month at the Hotel Pennsylvania (November, 2013). (SAC ¶¶ 40 & 41.)

Defendants Uniquest Hospitality LLC ("Uniquest"), Brookwood Hospitality LLC ("Brookwood"), Hilton Franchise Holding LLC ("Hilton Franchise"), Vornado Realty Trust, Vornado Realty L.P., and 401 Hotel TRS LLC have moved to dismiss the complaint for failure

---

[1] The two non-moving defendants are Jai Bhole, Inc. and Rudra MGMT, Inc., allegedly associated with the Boulevard Inn in Amherst, NY.

to state a claim for relief. The Court will grant the defendants' motions except as to the beneficiary liability claim against defendant Uniquest.

DISCUSSION

    I.    <u>Legal Standard on a Rule 12(b)(6) Motion</u>

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." <u>Id</u>.

When assessing a complaint, courts draw all reasonable inferences in favor of the non-movant. <u>See</u> <u>In re Elevator Antitrust Litigation</u>, 502 F.3d 47, 50 (2d Cir. 2007). The Court is not bound to accept "legal conclusion[s] couched as [] factual allegation[s]" as true. <u>Drimal v. Tai</u>, 786 F.3d 219, 223 (2d Cir. 2015) (internal quotation omitted). The Court examines only the well-pleaded factual allegations "and then determine[s] whether they plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 556 U.S. at 679.

    II.    <u>The TVPRA Claims</u>

Section 1591(a) of Title 18 imposes criminal liability upon:

Whoever knowingly—

    (1) . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
    (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

3

>knowing . . . that force, threats of force, fraud, [or] coercion . . . will be used to cause the person to engage in a commercial sex act. . . .

In addition to the criminal prohibition, the TVPRA provides victims of sex-trafficking as defined in section 1591 with a civil cause of action. Section 1595(a) of Title 18 provides

>. . .a victim of a violation . . . may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter). . . .

Section 1595 thus creates two kinds of civil liability: "perpetrator" liability and beneficiary liability. G.G. v. Salesforce.com, Inc., 76 F.4th 544, 552 (7th Cir. 2023).

Doe seeks to hold Uniquest, Brookwood, Vornado Realty Trust, Vornado Realty L.P., and 401 Hotel TRS LLC, i.e. all defendants except Hilton Franchise, liable under a "perpetrator" theory of liability, specifically for "harboring" Doe. Harboring is a term not defined in the statute but could include the concept of giving "shelter or refuge."[2] Harboring liability, which is a type of "perpetrator" liability, has two distinct knowledge requirements. It requires that the defendant "knowingly . . . harbors . . . a person" while "knowing . . . that force, threats of force, fraud, [or] coercion . . . will be used to cause the person to engage in a commercial sex act. . . ."

Doe also seeks to hold Uniquest, Brookwood, Hilton Franchise, Vornado Realty Trust, Vornado Realty L.P., and 401 Hotel TRS LLC liable as beneficiaries of her sex trafficking. "[T]o state a beneficiary claim under Section 1595(a), a plaintiff must plausibly

---

[2] Harbor, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/harbor (last accessed Sept. 9, 2024.) Because of the Court's conclusion that the SAC does not meet the knowledge requirement for "perpetrator" liability, it need not further define "harbor" or "harboring."

4

allege that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, [3] (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." Doe #1 v. Red Roof Inns, Inc., 21 F.4th 714, 725 (11th Cir. 2021).

      A.  Claims Relating to Embassy Suites Buffalo

The SAC alleges that Doe was trafficked at the Embassy Suites Buffalo an unidentified number of times between September 2013 and November 2013, a three-month period. (SAC ¶ 40.)

      1.  Uniquest. The SAC alleges that Uniquest "owned, operated, controlled, and/or managed the Embassy Suites [Buffalo]." (SAC ¶ 13.) An allegation that an entity owns operates, controls, or manages a hotel places the entity or, at least its employees, in a position to closely observe the day-in-day out, night-in-night out goings on at the hotel. Uniquest's employees and staff were in a position to observe potential indicators that Doe was being trafficked by another person. "[C]ourts . . . have adopted a negligence standard requiring that the defendant hotel 'should have known' of sex trafficking, not merely that it 'might have been able to guess' about sex trafficking." Doe (L.M.) v. 42 Hotel Raleigh, LLC, 23-cv-235 (FL), 2024 WL 631482, at *5 (E.D.N.C. Feb. 13, 2024). These "red flags" should be considered as a whole

---

[3] "The term 'venture' means any group of two or more individuals associated in fact, whether or not a legal entity." 18 U.S.C. § 1591(e)(6). "'[P]articipation in a venture' means knowingly assisting, supporting, or facilitating a violation" under section 1591(a)(1). Id. § 1591(e)(4). The Eleventh Circuit in Red Roof and the Seventh Circuit in G.G. v. Salesforce.com, Inc., 76 F.4th 544, 559 (7th Cir. 2023) define "participation in the venture" under section 1595 more expansively for civil liability than for criminal liability under section 1591. See Salesforce, 76 F.4th at 559. ("Since the 'venture' in question need not be primarily a sex-trafficking venture and the civil defendant itself need not have committed a criminal violation of Section 1591, 'participation in' that venture need not involve direct participation in the sex trafficking itself. It is the venture that must violate Section 1591, and not the participant.")

and not in isolation in determining whether Uniquest had the knowledge or, in the case of one element of beneficiary liability, constructive knowledge to state a claim.

Some of the "red flags" alleged by Doe in her pleading are consistent with both sex trafficking and the typical behavior of ordinary guests staying at a low-end hotel—the hotel room was paid for with a prepaid card, a male made a reservation in a female guest's name and was present at check in, and when requesting new linens or towels, the female guest exchanged them at the door. (SAC ¶ 90.) Other "red flags" are consistent with prostitution but not necessarily sex trafficking. Doe entered the hotel lobby in lingerie to meet "johns" and bring them to her room, and "heavy foot traffic" flowed in and out of her room. (Id.) But "prostitution and sex trafficking by force or fraud are not coterminous." 42 Hotel Raleigh, LLC, 2024 WL 631482, at *4.

There are also allegations that Doe stayed for extended periods (within the three-month window alleged), that "[h]ousekeeping staff were prevented from entering the room for regular cleaning, towel exchange and other standard room services," (SAC ¶ 90(c)); "[t]he trafficker was often present with [Doe] at check in and would linger around the hotel or in the parking lot while she was with a john;" (Id. ¶ 90 (e)), and that the "trafficker limited her ability to communicate with hotel staff, such that it was obvious and apparent she was being subjected to coercion and control." (Id. ¶ 90(h).) Taking the totality of the allegations, they are sufficient to state a claim against Uniquest for beneficiary liability which requires that the person sought to be held liable knowingly benefited "from participation in a venture which that person knew or should have known has engaged in" sex trafficking of the plaintiff.

The SAC does not make out a claim of "perpetrator" liability that requires actual knowledge of the sex trafficking activity. See Acevedo v. eXp Realty, LLC, 23-cv-

6

01304(AB)(AGR), 2024 WL 650189, at *9 (C.D. Cal. Jan. 29, 2024) ("actual knowledge"). Stripped of conclusory allegations and legal conclusions, the SAC does not plausibly allege that Uniquest had actual knowledge that "force, threats of force, fraud, [or] coercion . . . will be used to cause the person [i.e. Doe] to engage in a commercial sex act. . . ."

        2.     <u>Brookwood</u>.  The SAC does not plausibly allege how Brookwood would have been in a position to observe the "red flags" as they relate to the trafficking of Doe.  The SAC alleges that "upon information and belief, at all relevant times, Brookwood provided management services at the Embassy Suites Buffalo. . . ." (SAC ¶ 16.)  There is no description of the "management services" provided at the hotel but the term is a broad enough term to encompass any of the following services, among others: human resources, staff recruiting, payroll, design, marketing or bookkeeping.  An allegation that Brookwood provided management services at the location does not plausibly allege that Brookwood knew or should have known that the "venture" from which it was allegedly benefitting was causing Doe to engage in commercial sex acts through force, fraud or coercion.  General knowledge of the prevalence of sex trafficking in low priced hotels is insufficient.  The "knew or should have known" standard applies to the sex trafficking of the particular victim-plaintiff.  <u>Red Roof Inns, Inc.</u>, 21 F.4th at 725 ( "the defendant must have either actual or constructive knowledge that the venture—in which it voluntarily participated and from which it knowingly benefited—violated the TVPRA <u>as to the plaintiff</u>.") (emphasis added).

        As noted, Doe also seeks to hold Brookwood liable on a "perpetrator" theory. Because Doe has not alleged actual knowledge on the part of Brookwood beyond conclusory assertions and legal labels, she cannot state a "perpetrator" claim against Brookwood.

7

       3.      <u>Hilton Franchise</u>.  Doe alleges a beneficiary claim against Hilton Franchise asserting that it operated the reservation system and set procedures for front desk operations at Embassy Suites Buffalo, the franchisee. (SAC ¶ 101(f), (m).)  Hilton Franchise collected and monitored customer surveys and complaints, conducted regular inspections, monitored online reviews and monitored "patterns in reports of criminal activity." (<u>Id</u>. at ¶ 86.)  It also knew, as a franchisor of hotels, that sex trafficking at hotels was widespread throughout the country, including at Hilton-branded hotels.  (<u>Id</u>. at ¶¶ 71-79.)  In public statements, it acknowledged knowing that "[s]ex trafficking and sexual tourism is a large and growing problem worldwide. . . ." (<u>Id</u>. at ¶ 72(c).)  But crediting all of the allegations of the SAC, they do not plausibly allege that Hilton Franchise or its employees had reason to know or suspect that Doe was being trafficked at the Embassy Suites Buffalo.  The SAC does not identify any information specific to the trafficking of Doe that came to the attention of Hilton Franchise that would support an allegation of actual or constructive knowledge of sex trafficking of Doe.  <u>See</u> <u>Doe #1 v. Red Roof Inns, Inc.</u>, 21 F.4th 714, 726-27 (11th Cir. 2021) ("These allegations may suggest that the franchisors financially benefitted from renting hotel rooms to the Does' sex traffickers.  But they do nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA—<i>i.e.</i>, the alleged sex trafficking ventures."); <u>id</u>. at 726 (viable beneficiary claim requires that "the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA <u>as to the plaintiff</u>.") (emphasis added). The SAC does not plausibly allege a beneficiary claim against Hilton Franchise.  No "perpetrator" claim is alleged against Hilton Franchise.

       4.      <u>Participant Liability</u>.  Doe posits that Embassy Suites Buffalo was a "venture" in which Brookwood and Hilton Hospitality "participated" that engaged in sex

8

trafficking of Doe. (SAC ¶ 9.) But Doe's submission in opposition to the motion concedes that her "participation in a venture" theory is part of her beneficiary liability claim. (ECF 132, at 15.) It is not sufficient that one member of the venture have actual or constructive knowledge of the sex trafficking of Doe. To state a beneficiary liability claim, the plaintiff must plausibly allege that "defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." Red Roof Inns, Inc., 21 F.4th at 725.

    B. Claims Relating to the Hotel Pennsylvania

Doe's claim against Vornado Realty Trust, Vornado Realty L.P. and 401 Hotel TRS LLC relating to the trafficking of Doe at the Hotel Pennsylvania during the month of November in 2016 suffers from similar defects. She asserts "perpetrator" and beneficiary liability claims against the three defendants.

Doe alleges that 401 Hotel TRS LLC and Vornado Realty L.P. are subsidiaries of Vornado Realty Trust. (SAC ¶¶ 23-26.) The SAC alleges "[u]pon information and belief, at all relevant times, Defendants Vornado Realty Trust, Vornado L.P., and 401 Hotel TRS LLC, acted individually and collectively to own, operate, control, manage, and supervise the Hotel Pennsylvania. . . ." (Id. ¶ 27.) The 224-paragraph complaint makes no attempt to differentiate the roles of any of three defendants in the operations and ownership of the Hotel Pennsylvania. Instead, the SAC lumps these three defendants together as the "Hotel Pennsylvania defendants," and makes all factual allegations against the "Hotel Pennsylvania defendants" as a group.

"Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests. By lumping all the defendants together in each claim and providing no factual basis to distinguish

9

their conduct, [plaintiff's] complaint failed to satisfy this minimum standard . . . ." <u>Atuahene v. City of Hartford</u>, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order); <u>see also</u> <u>Medina v. Bauer</u>, No. 02 Civ. 8837 (DC), 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) (Chin, J.) ("By lumping all the defendants together and failing to distinguish their conduct, plaintiff's amended complaint fails to satisfy the requirements of Rule 8.")

The SAC's undifferentiated allegations of involvement do not plausibly allege that during the 30-day period alleged (SAC ¶ 41) any one of the three defendants knew or should have known that a venture in which they were a participant was trafficking Doe at the Hotel Pennsylvania. By merely lumping Vornado Realty Trust, Vornado Realty L.P., and 401 Hotel TRS LLC together as the Hotel Pennsylvania defendants and failing to describe their roles in the Hotel Pennsylvania, the SAC fails to plausibly allege that any of the three defendants knew or should have known Doe was being trafficked at the Hotel Pennsylvania during the 30-day period alleged (SAC ¶ 41), and the beneficiary liability claim fails.

Doe's "perpetrator" liability claims against Vornado Realty Trust, Vornado L.P., and 401 Hotel TRS LLC also fail. The SAC does not allege actual knowledge of sex trafficking beyond conclusory allegations and legal labels. Similarly, the "participated in a venture" theory is part and parcel of the beneficiary theory and fails for the same reason.

III.  <u>The Vicarious Liability Claims</u>

The SAC separately purports to plead a claim for relief for vicarious liability. (SAC ¶¶ 208-219.) The claim makes the assertions that "[u]nder the TVPRA and the federal common law, a principal is vicariously liable for violations of its actual agent and its subagents" and "[u]nder the TVPRA and the federal common law, an entity [is] vicariously liable for the acts and omissions of its alter-egos." (<u>Id</u>. ¶¶ 210, 213.) Thereafter, it concludes "[e]ach of the ES

10

Brand Defendant [Uniquest and Brookwood] is vicariously liable for the TVPRA violations of each of the other ES Brand Defendants" and "[e]ach of the Hotel Pennsylvania Defendants [Vornado Realty Trust, Vornado Realty L.P. and 401 Hotel TRS LLC] is vicariously liable for the TVPRA violations of each of the other Hotel Pennsylvania Defendants." (Id. ¶¶ 217, 218.) These are nothing but conclusory allegations and legal labels not entitled to the presumption of truth. Conclusory allegations of alter ego status are not actionable. See Arctic Ocean International, Ltd. v. High Seas Shipping Ltd., 622 F. Supp. 2d 46, 55 (S.D.N.Y. 2009) (collecting cases). The same is true of conclusory allegations of agency. See Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP, 03-cv-0613 (GBD), 2004 WL 112948, at *6 (S.D.N.Y. Jan. 22, 2004).

The only allegation with any factual content is the assertion that Uniquest and Brookwood are agents of Hilton Franchise because Hilton Franchise "exercised or retained the right to exercise systematic and day-to-day control over the means and methods used by its franchisee to operate Embassy Suites Buffalo." (SAC ¶ 209.) Under New York law, a franchisee is generally not the agent of a franchisor. S.J. v. Choice Hotels International, Inc., 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020). Nothing is alleged satisfying the "high standard" of "complete control" rendering the franchisee's independence a "fiction." Id. at 154-55.

The vicarious liability allegations fail to state a claim for relief.

CONCLUSION

The motions to dismiss plaintiff's complaint for failure to state a claim are GRANTED as to Brookwood, Hilton Franchise, Vornado Realty Trust, Vornado Realty L.P. and 401 Hotel TRS LLC. The motion to dismiss of Uniquest is DENIED as to the beneficiary

11

liability claim and otherwise GRANTED. The Clerk of Court is respectfully requested to terminate docket entries 123, 125, 127, and 129.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
September 11, 2024