# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| S.C., | Case No.: 2:23-cv-02037-APG-DJA |
| Plaintiff | **Order Denying Defendant Hilton Franchise Holding's Motion to Dismiss and N.W.H. and SSJV Hospitality's Joinders and Granting Hilton's Motions to File Supplemental Authority** |
| v. | |
| HILTON FRANCHISE HOLDING LLC, et al., | [ECF No. 40, 63, 64] |
| Defendants | |

Plaintiff S.C. sues Hilton Franchise Holding, LLC, hotel operators, and several individuals alleging they participated in or benefitted from sex trafficking S.C. at a Las Vegas Hampton Inn. S.C. brings claims under the Trafficking Victims Protection Reauthorization Act (TVPRA) and the Child Abuse Victims' Rights Act (CAVRA), as well as claims under Nevada law for victims of human trafficking, negligence, and intentional infliction of emotional distress (IIED). Hilton moves to dismiss all of S.C.'s claims arguing that she fails to plausibly allege a cause of action against Hilton or its franchisees and that her state common-law claims are time-barred. Defendants N.W.H. Ltd. and SSJV Hospitality LLC (collectively, the Hampton Inn Defendants), who owned and operated the Hampton Inn during the relevant time, join Hilton's motion. ECF Nos. 41; 60. Hilton also requests leave to file supplemental authority for two cases decided after it filed its reply. ECF Nos. 63; 64. I grant Hilton's motion for leave to file supplemental authorities, but because S.C. plausibly alleges all elements of each of her claims, I deny the defendants' motion to dismiss. I also grant S.C. leave to amend her complaint if she chooses to allege a perpetrator claim based on "harboring."

*////*

**I.  BACKGROUND**

S.C. alleges[1] that she fell under the control of a series of individuals who coerced, threatened, and forced her into commercial sex work beginning when she was 16 years old. ECF No. 36 at 4-5.  During the period of her trafficking, from mid-2019 until late 2020, S.C. was coerced into having commercial sex with older men more than 150 times at the Hampton Inn at 7100 Cascade Valley Court in Las Vegas. *Id.* at 5.  Approximately two of every three encounters at the Hampton Inn were with the same man, a nonparty under the pseudonym Mohammad A. *Id.* at 6.  Mohammad A. was approximately 50 years old and would book a room in advance at the Hampton Inn while S.C.'s traffickers would deliver her at the front door and wait in a car in the parking lot within view of the hotel's security cameras. *Id.* at 5-6.  Mohammad A. lived only a few miles away from the Hampton Inn and booked rooms using his home address through Hilton's online reservation portal twice per week. *Id.* at 12.  Despite these frequent bookings, Mohammad A. would stay for only a couple of hours, just long enough to meet with S.C. and leave behind a room with used condoms in the trash and soiled sheets. *Id.* at 6.  S.C. also met with other sex purchasers at the Hampton Inn approximately once per week. *Id.*

While being trafficked, S.C. appeared youthful to the degree that any reasonable person would conclude she was under 18 years old. *Id.* at 5.  For each of her visits to the Hampton Inn, she would walk past the hotel front desk in sexual attire that was inappropriate for her age and the weather. *Id.*  Each visit she would exit a vehicle driven by older persons who waited behind, walk to a room rented by a much older man, and leave within a few hours in the same car. *Id.*  In addition to her visible youth, S.C. experienced physical and emotional abuse that caused her

---

[1] All facts are taken from S.C.'s first amended complaint (ECF No. 36), which I must take as true when considering a motion to dismiss. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).

physical appearance to visibly deteriorate. *Id.* at 6.  Her traffickers beat her several times, at least once resulting in a black eye. *Id.*  In addition to abuse, the traffickers plied S.C. with ecstasy and other illegal drugs causing her to deteriorate from good health to weighing only 90 pounds and struggling to walk. *Id.* at 6-7.

Within a few weeks of her regular visits, S.C. alleges that the Hampton Inn staff noticed this behavior and concluded that she was underage and being forced to engage in prostitution. *Id.* at 7.  Hampton Inn staff never attempted to identify S.C., verify her age, call police, or evict the men she was visiting. *Id.*  As franchisor of the Hampton Inn, Hilton requires all employees and managers of the Hampton Inn to take sex-trafficking training. *Id.* at 8.  This training emphasizes a difference between sex trafficking and consensual, "normal" sex work. *Id.*  This training led to a culture that encouraged the Hampton Inn staff to not interfere with sex work on its premises to profit from room rentals while avoiding reputational harm from intervening and creating a "scene." *Id.* at 7-8.

S.C. alleges that, as franchisor, Hilton controlled many operations of the Hampton Inn. Hilton maintained strict brand quality standards and enforced these standards with regular inspections. *Id.* at 9, 12.  Hilton required franchisees to use a proprietary business system, which includes inventory and rate management, reservations, property management, and employee training. *Id.* at 9.  The proprietary system recommended room rates and employee compensation rates. *Id.* at 10.  The Hampton Inn needed Hilton's approval before hiring managers, and Hilton was free to withhold approval or require the franchisees to hire a hotel management company approved by Hilton. *Id.* at 9.  Hilton provided its franchisees with sample employment contracts for different positions and oversaw mandatory training, which all employees must complete within two weeks of being hired. *Id.* at 9-10.

Hilton required Hampton Inn to use its proprietary central reservation system and did not allow Hampton Inn to maintain its own website. *Id.* at 11. Hilton also required Hampton Inn to use its preferred guest internet vendor. *Id.* at 10. Through its various proprietary systems, Hilton reserved the right to detect criminal activity at its franchise locations and turn that evidence over to law enforcement. *Id.* at 11. Hilton monitored all guest complaints on online platforms and could respond to complaints in place of a franchisee. *Id.* Hilton could fine its franchisees if they failed to respond to online complaints or if they failed on-site inspections. *Id.* S.C. alleges that Hilton's reservation software flagged Mohammad A.'s frequent visits to the Hampton Inn as suspicious but Hilton did not investigate further. *Id.* at 12.

Hilton required franchisees to track and report known and suspected criminal activity, and Hilton tracked such activity itself as well. *Id.* S.C. alleges that Hampton Inn managers and employees reported several instances of suspected sex trafficking to Hilton between 2019 and 2020, including their conclusion that S.C. was being trafficked. *Id.* S.C. alleges that she met Mohammad A. at the Hampton Inn so often that it likely occurred during at least one Hilton inspection, during which Hilton employees observed her or were told about her underage trafficking and recorded this information in their inspection report. *Id.* at 12-13.

**II. DISCUSSION**

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555. A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Hilton takes issue with many of S.C.'s allegations pleaded on "information and belief." "The *Twombly* plausibility standard does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (simplified). And facts about "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Most of the facts S.C. alleges on information and belief go to either internal training, policies, and procedures of the hospitality defendants, which are peculiarly within those defendants' control, or involve allegations about the state of mind of the employees who observed S.C. and her traffickers' behavior at the Hampton Inn. I therefore consider these allegations in determining whether S.C. has plausibly stated her claims.

**A. TVPRA**

The TVPRA imposes both criminal and civil penalties for sex trafficking. A victim of sex trafficking may sue (1) the perpetrator of their trafficking, and (2) "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged" in sex trafficking. 18 U.S.C. § 1595(a). S.C. alleges both perpetrator and beneficiary liability against the Hampton Inn Defendants and against Hilton. She further alleges that Hilton is indirectly

liable because the Hampton Inn Defendants are Hilton's agents or because Hilton is a joint

employer responsible for the actions of the Hampton Inn employees.

As a threshold matter, S.C. plausibly alleges that she is a victim under 18 U.S.C.

§ 1591(a), which prohibits several acts toward a person knowing or in reckless disregard of the

fact that the person is being sex trafficked.  Sex trafficking means the victim engaged in

commercial sex acts either while under 18 years of age or due to force, threat of force, fraud, or

coercion. 18 U.S.C. § 1591(a).  S.C. plausibly alleges that she was under 18 years of age during

the time she was trafficked and that her traffickers used force, threats of force, and coercion.

Thus, she is a "victim" with standing to sue under the TVPRA.

### 1.  Beneficiary Liability[2]

To bring a beneficiary claim under § 1595(a), S.C. must allege that the defendants

"(1) knowingly benefitted (2) from participation in a venture (3) that [they] knew or should have

known has engaged in trafficking" her. *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-00672-

KJM-JDP, 2023 WL 3456619, at *3 (E.D. Cal. May 15, 2023) (simplified); 18 U.S.C. § 1595(a).

A trafficker renting rooms, or Hilton receiving royalties for that rental, is sufficient to show the

defendants knowingly benefitted. *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-

BLF, 2020 WL 4368214, at *4 (N.D. Cal. Jul. 30, 2020).  Participation in a venture means "an

undertaking or enterprise involving risk and potential profit." *Doe #1 v. Red Roof Inns, Inc.*, 21

F.4th 714, 724 (11th Cir. 2021).  The venture need not be a "sex-trafficking venture," and "can

---

[2] The first amended complaint mistakenly refers to beneficiary liability as "aiding and abetting
liability" under 18 U.S.C. § 1595. ECF No. 36 at 14.  Hilton's motion to dismiss acknowledges
that § 1595(a) includes beneficiary liability and responds to that theory for "the sake of
completeness." ECF No. 40 at 16 n.6.  S.C. corrects this error in her response, and Hilton
addresses beneficiary liability in its reply. ECF Nos. 45 at 3-4 n.1; 47 at 2-6, 10-12.  Reading the
first amended complaint as a whole, S.C. describes the elements of beneficiary liability despite
her improper label.

also be a business whose primary focus is not on sex trafficking." *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 554 (7th Cir. 2023) (quotation omitted).  Whether a participant in a venture knew or should have known that the venture engaged in trafficking imposes a negligence standard. *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1177 (9th Cir. 2022) ("The phrase 'knew or should have known' usually connotes negligence," which is "a less culpable mental state than actual knowledge or recklessness." (simplified)).

### a. Hampton Inn Defendants

S.C. plausibly alleges that the Hampton Inn Defendants knowingly benefitted financially by renting rooms to Mohammad A. and other men who purchased sex acts from S.C. and her traffickers.  S.C. also plausibly alleges that the Hampton Inn participated in a venture by undertaking a course of repeat business with Mohammad A., renting him rooms twice per week on average for a year. *See A.M. v. Wyndham Hotels & Resorts, Inc.*, --- F. Supp. 3d ----, 2024 WL 1347301, at *5 (S.D. Ohio Mar. 29, 2024) (collecting cases) ("[P]articipation in a venture under § 1595 does not require actual knowledge of trafficking crimes but requires at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." (quotation omitted)).

Hilton relies on the Eleventh Circuit's decision in *Red Roof Inns* to argue that S.C. fails to identify a venture between the traffickers and the Hampton Inn Defendants or Hilton.  However, several courts have since distinguished *Red Roof Inns* because that case involved a plaintiff that specifically alleged a "sex-trafficking venture" and failed to plausibly support that theory. *See, e.g., G.G.*, 76 F.4th at 554, 559 (holding that "the relevant venture under Section 1595 need not be specifically a sex trafficking venture" and "participation does not require direct participation

in the sex trafficking" (simplified)).[3]  The *Red Roof Inns* court acknowledged that alleging "that the franchisors participated in commercial ventures to operate hotels and that those hotel ventures violated the statute" might satisfy the venture element but the plaintiffs did not properly plead that theory. 21 F.4th at 727; *see also id.* at 725-26 (stating that allegations that a trafficker had prior commercial dealings with the hotel, that both wanted to continue for profit, and that the hotel rented a room to the trafficker to force the victim to engage in commercial sex acts sufficed to allege that a hotel participated in a venture with a sex trafficker).  "It is the venture that must violate Section 1591, and not the participant." *G.G.*, 76 F.4th at 559.

S.C. also plausibly alleges that the Hampton Inn Defendants knew or should have known that their business venture of repeatedly renting rooms to Mohammad A. violated § 1591. Mohammad A. rented a room twice per week from a hotel located only a few miles from his home.  Mohammad A. then would stay for only a few hours and be joined by an apparently underage girl dressed in sexually provocative clothing and leave behind stained sheets and used condoms.  S.C. alleges that, while appearing younger than 18, she also bore indicia of sex trafficking including her traffickers dropping her off and picking her up while waiting in the parking lot during her visits; visibly declining health; and, on at least one occasion, a black eye. S.C. also alleges that staff observed these signs, concluded that she was being forced to engage in prostitution, and reported these conclusions to their managers.  These facts are sufficient to show that the Hampton Inn Defendants knew or should have known that Mohammad A. was

---

[3] *See also A.M.*, 2024 WL 1347301, at *6; *B.J. v. G6 Hospitality, LLC*, No. 22-cv-03765-MMC, 2023 WL 6120682, at *4 (N.D. Cal. Sept. 18, 2023) (noting plaintiffs can plead participation in a venture "by alleging a direct association between the defendant hotel and the plaintiff's trafficker, or by showing a continuous business relationship"); *K.O. v. G6 Hospitality, LLC*, --- F. Supp. 3d ----, 2024 WL 1396269, at *7 (E.D. Mich. Mar. 31, 2024).

involved in sex trafficking S.C., and that the Hampton Inn Defendants knowingly benefitted from their pattern of business with Mohammad A.

### b.  Hilton

Hilton argues that S.C. does not allege that Hilton participated in a venture that participated in trafficking.  S.C. responds that the franchisor-franchisee relationship between Hilton and the Hampton Inn Defendants was the relevant venture, that Hilton should have known that this venture was engaged in violations of § 1591, and it is reasonable to infer that Hilton benefitted financially from the franchise agreement with the Hampton Inn Defendants.

S.C. argues that "Hilton was on notice about the prevalence of [sex] trafficking at its hotels, yet it failed to take adequate steps to train staff in order to prevent its occurrence." ECF No. 45 at 13 (quotation omitted).  But this argument improperly seeks to impose a duty on Hilton to prevent sex trafficking in its hotels, which is not the TVPRA's purpose. *See A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1027 (D. Or. 2021) ("[T]he TVPRA does not impose an affirmative duty to police and prevent sex trafficking."); *B.M..*, 2020 WL 4368214, at *7 ("To be clear, the Court does not read section 1595 of TVPRA [as] requiring hotels or their franchisors to affirmatively stop sex trafficking.").  Rather, the TVPRA establishes a duty to refrain from knowingly benefitting from participation in a venture that Hilton knew or should have known violated § 1591. 18 U.S.C. § 1595(a).  S.C. also argues that Hilton had constructive knowledge based on Mohammad A.'s suspicious pattern of room rentals.  While this pattern may show that Hilton had constructive knowledge that Mohammad A. was engaging in commercial sex at the Hampton Inn generally, it is not sufficient to show that Hilton, through its reservation system, knew or should have known that these acts were trafficking under § 1591.  The pattern

alone did not show with whom Mohammad A. was meeting, that person's age, or whether they met with him under force, threats of force, fraud, or coercion.

Reading the first amended complaint (FAC) as a whole, however, S.C. alleges that Hampton Inn employees concluded that S.C. was underage and being trafficked, that the employees were under a duty to inform Hilton of suspected trafficking, and that the Hampton Inn employees did inform Hilton of suspected trafficking during the relevant time period, including S.C.'s trafficking. Along with the financial benefit of the franchise agreement, these facts plausibly allege that Hilton knowingly benefitted from a venture that engaged in sex trafficking. *See B.J. v. G6 Hospitality*, LLC, No. 22-cv-03765-MMC, 2023 WL 6120682, at *4 (N.D. Cal. Sept. 18, 2023) (finding plausible franchisor liability where allegations "permit an inference that [hotel] staff members had knowledge of [the victim's] trafficking and would have reported it to" the franchisor).

### 2. Perpetrator Liability

A perpetrator under 18 U.S.C. § 1591(a) may be either a direct perpetrator who "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means" a sex-trafficking victim (§ 1591(a)(1)), or a beneficiary of such acts through participation in a venture (§ 1591(a)(2)). "However, the standard for [perpetrator] beneficiary liability pursuant to section 1591 is higher: to be held criminally liable as a beneficiary, a defendant must have actual knowledge of the trafficking and must assist, support, or facilitate the trafficking venture." *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1141 (9th Cir. 2022) (simplified); 18 U.S.C. § 1591(a)(2), (e)(4). When a claim is based on age rather than force, fraud, or coercion, "the [plaintiff] need not prove that the defendant knew or recklessly disregarded the fact" that the

victim was less than 18 years old if "the defendant had a reasonable opportunity to observe" the victim. 18 U.S.C. § 1591(c).

The FAC alleges that Hilton and the Hampton Inn Defendants are beneficiary perpetrators under § 1591(a)(2).  Hilton argues that S.C. has not alleged a venture that criminally trafficked her, nor has she alleged that Hilton or the Hampton Inn Defendants had actual knowledge.  S.C. does not respond to this argument, instead describing violations under § 1591(a)(1).  But reading the facts in the FAC as true and drawing all reasonable inferences in her favor, S.C. has pleaded a plausible perpetrator theory for beneficiary or participant liability under § 1591(a)(2).

First, S.C. has plausibly alleged that Hilton and the Hampton Inn Defendants had actual knowledge of sex trafficking.  Knowledge does not require "certainty as to a future act" but rather "is a state of mind in which the knower is familiar with a pattern of conduct." *United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010).  For the purposes of a complaint, "knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  The Hampton Inn's employees had the opportunity to observe S.C. as she strode past the front desk to meet Mohammad A. and other sex purchasers three times per week for a year.  S.C. alleges that she looked visibly younger than 18, so she does not need to allege the defendants' actual knowledge of her age because they were able to observe her.  Due to her traffickers waiting in the parking lot, her visibly deteriorating health, her youth and inappropriate dress, S.C. alleges that Hampton Inn employees "knew that [S.C.] was most likely an underage girl being forced to engage in prostitution" and reported their conclusions to their managers. ECF No. 36 at 7.  S.C. also plausibly alleges that Hilton had actual knowledge because she alleges that the Hampton Inn was required to report sex trafficking to Hilton and did so.

Second, S.C. has plausibly alleged that Hilton and the Hampton Inn Defendants assisted, supported, or facilitated her trafficking.  S.C. plausibly alleges that the defendants rented Mohammad A. a room twice per week knowing that he used that room to meet with S.C. for commercial sex.  By providing this room despite the actual knowledge described above, the Hampton Inn facilitated S.C.'s trafficking.[4]  Because Hilton provided the centralized reservation system that Mohammad A. allegedly used to book his rooms at the Hampton Inn, and it was informed of sex trafficking at that location, Hilton also facilitated the trafficking.  Because S.C. has plausibly alleged a financial benefit and participation in a venture for her beneficiary claim, I deny Hilton's motion to dismiss her perpetrator claim brought under 18 U.S.C. § 1591(a)(2). *See J.M.*, 2023 WL 3456619, at *3 (finding a plaintiff plausibly alleged perpetrator liability against a hotel franchisor where its franchisee's staff knew about trafficking and the franchisor required all franchisee hotel employees "to report potential criminal activity or 'indices of human trafficking' to [the franchisor's] corporate executives and upper-level management" (cleaned up)).

In her opposition, S.C. argues that Hilton and the Hampton Inn Defendants are perpetrators under § 1591(a)(1) because they harbored her.  But the FAC alleges only perpetrator liability under § 1591(a)(2) against Hilton and the Hampton Inn Defendants. ECF No. 36 at 14 (alleging that "Hilton, NWH, SSJV, and FPH are 'perpetrator[s]' of Plaintiff's sex trafficking within the meaning of 18 U.S.C. § 1591(a)(2)").  I therefore decline to consider S.C.'s harboring arguments.  But I grant her leave to amend her complaint if she wishes to allege facts to support perpetrator liability against the hospitality defendants under § 1591(a)(1).  Although Hilton

---

[4] "A defendant acts with the intent to facilitate the crime when the defendant actively participates in a criminal venture with advance knowledge of the crime." Ninth Circuit Manual of Model Criminal Jury Instructions, § 4.1 Aiding and Abetting, (2022); *Rosemond v. United States*, 572 U.S. 65, 71 (2014).

argues in its reply that a hotel does not "harbor" its guests, amendment would not be futile because other courts have concluded that a hotel can harbor under the TVPRA by renting rooms to a trafficker. *See Doe (G.N.C.) v. Uniquest Hosp., LLC*, No. 23-cv-7980 (PKC), 2024 WL 4149251, at *2 (S.D. N.Y. Sept. 11, 2024) (stating that harboring requires a showing that the defendant "knowingly harbors a person while knowing that [the person is under 18, or] force, threats of force, fraud or coercion will be used to cause the person to engage in a commercial sex act," but concluding that the plaintiff had not adequately alleged the hotel at issue had such knowledge to support perpetrator liability) (simplified)); *J.M.*, 2023 WL 3456619, at *2-3 (applying a similar standard and denying a motion to dismiss the plaintiff's claims for perpetrator liability against both the franchisee and franchisor).

### *3. Indirect Liability*

S.C. alleges that Hilton is vicariously liable as a beneficiary and as a perpetrator through the actions of the Hampton Inn employees. She argues that Hilton has sufficient control over the day-to-day operation of the Hampton Inn and its employees that they are effectively Hilton's agents. She also contends that Hilton exercises sufficient control over the Hampton Inn employees to be considered their joint employer. Hilton argues that it does not control the Hampton Inn Defendants other than maintaining brand standards consistent with a typical franchise agreement, which does not create an agency relationship or joint employer status.

The TVPRA does not mention whether a defendant can be liable under vicarious liability or joint employer theories. Absent a statutory direction to the contrary, the Ninth Circuit applies the federal common law of agency to a federal statute like the TVPRA. *U.S. Equal Emp. Opp. Comm. v. Global Horizons, Inc.*, 915 F.3d 631, 638-39 (9th Cir. 2019) (relying on federal common law of agency to determine joint employer status for a Title VII claim); *see also Norfolk*

*Redevelopment and Hous. Auth. v. Chesapeake and Potomac Tel. Co. of Va.*, 464 U.S. 30, 35-36 (1983) ("It is a well-established principle of statutory construction that the common law ought not to be deemed repealed, unless the language of a statute be clear and explicit for this purpose." (simplified)).  This construction is consistent with other courts examining TVPRA cases against hotels. *See e.g.*, *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 939-40, 942 (D. Or. 2020); *A.M.*, 2024 WL 1347301, at *9-11.  Accordingly, I address whether S.C. has plausibly alleged that Hilton is vicariously liable either because the Hampton Inn Defendants are its agents or because Hilton is a joint employer of the Hampton Inn employees.

*a.  Agency*

To determine whether an agency relationship exists, the Ninth Circuit applies common law principles from the Restatement (Third) of Agency. *See Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017).  An actual agency relationship requires (1) the principal's right to direct or control the agent's actions, (2) the principal manifesting consent to the agent that the agent shall act on its behalf, and (3) the agent accepting the undertaking. *Meyer v. Holley*, 537 U.S. 280, 286 (2003); Restatement (Third) of Agency § 1.01 (Am. L. Inst. 2006).  Although "some degree of control by the franchisor over the franchisee" is inherent, "the mere existence of a franchise relationship does not necessarily trigger a master-servant relationship." *In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1210 (Fed. Cir. 2022) (simplified).  Whether a franchisor is liable for its franchisee's actions depends on the degree of control the franchisor has over the franchisee's day-to-day operations with respect to the instrumentality, conduct, or specific aspect of the franchisee's business that caused the plaintiff's

injury. *See* Restatement (Third) of Agency § 1.01 cmt. c ("Only interactions that are within the scope of an agency's relationship affect the principal's legal position.").[5]

S.C. plausibly alleges that Hilton controlled the Hampton Inn's day-to-day operations with respect to the aspect of the Hampton Inn's business that knowingly benefitted from her sex trafficking. According to the FAC, Hilton mandates training "that discourages employees from interfering with probable sex trafficking." ECF No. 36 at 8, 10. Hilton required all the Hampton Inn's online bookings to be made using Hilton's central reservation system, which included the repeated room rentals by Mohammad A. Hilton required Hampton Inn employees to report known and suspected criminal activity, including sex trafficking, and Hampton Inn employees did report S.C.'s sex trafficking to Hilton. *Id.* at 12. Hilton set exacting standards and enforced those standards with regular inspections, fines, and retaining the ability to override hiring or mandate hiring an approved management company. Finally, Hilton set standards for room pricing as well as employee responsibilities, salary, and training. Other district courts have found similar allegations sufficient to plausibly allege an agency relationship for TVPRA cases.[6]

---

[5] *See also A.B.*, 484 F. Supp. 3d at 940 (applying Oregon caselaw); *Patterson v. Domino's Pizza, LLC*, 333 P.3d 723, 739 (Cal. 2014) (collecting cases from other jurisdictions and concluding that franchisor liability depends on its "control over the instrumentality, the conduct, or the specific aspect of the franchisee's business that caused the alleged injury" (simplified)); *Hunter Min. Labs., Inc. v. Mgmt. Assistance, Inc.*, 763 P.2d 350, 352 (Nev. 1988) ("Only when a manufacturer controls the day to day or operative details of the dealer's business is an agency potentially created.").

[6] *See e.g.*, *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-00672-KJM-JDP, 2022 WL 10626493, at *5 (E.D. Cal. Oct. 18, 2022) (collecting cases and holding that the plaintiff sufficiently pleaded an agency relationship where the "defendants exercised control over the day-to-day operations of the hotels by hosting online bookings, setting hotel employee wages, making employment decisions for the hotels, providing standardized training methods for hotel employees, and fixing hotel room rent prices"); *A.B.*, 484 F. Supp. 3d at 940; *C.S. v. Wyndham Hotels & Resorts, Inc.*, 538 F. Supp. 3d 1284, 1299 (M.D. Fla. 2021); *A.M.*, 2024 WL 1347301, at *10; *G.P. v. Wyndham Hotels & Resorts, Inc.*, No. 2:22-cv-2682, 2024 WL 1347407, at * 8 (S.D. Ohio Mar. 29, 2024).

###### b. *Joint Employer*

S.C. also alleges that Hilton is vicariously liable for the Hampton Inn's employees' conduct because it is a joint employer of those employees. Acknowledging that there are multiple tests for determining if an entity is a joint employer, the Ninth Circuit adopted the common-law agency test for Title VII cases because the statute "did not meaningfully define" the employer-employee relationship. *Global Horizons*, 915 F.3d at 638-39. Because the TVPRA also does not meaningfully define joint employment, I apply the same test.

Under this test, "the principal guidepost is the element of control . . . over the details of the work of the other." *Id.* at 638 (quotation omitted). The Supreme Court has provided a non-exhaustive list of factors to determine whether there is sufficient control to establish a joint employer relationship:

> the skill required; the source of the instrumentalities and the tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24 (1992)).

S.C. has plausibly alleged that Hilton exercised sufficient control over the Hampton Inn employees to be their joint employer. She alleges that Hilton provides mandatory training to franchisee employees and houses employee training records and content on its proprietary system. This training encourages employees to not interfere with consensual prostitution. Hilton and the Hampton Inn train the hotel's staff not to refuse room rentals or interfere with trafficking to avoid disturbing other guests. All employees must complete this training to Hilton's satisfaction, effectively allowing a veto over all employee hires. Hilton also retains the right to

1  approve or disapprove of the Hampton Inn's managers or require the owners to hire a third-party

2  management company of Hilton's choice.  Hilton also requires franchisees to track and report

3  criminal activity including sex trafficking.  Taking these allegations as true, as I must, S.C. has

4  plausibly alleged that Hilton was a joint employer with regards to the Hampton Inn employees'

5  response to sex trafficking.

6              *4. Hilton's Supplemental Authority*

7              Hilton moves to submit two district court cases decided after Hilton filed its reply. ECF

8  Nos. 63, 64.  First, Hilton points to *Doe (G.N.C.) v. Uniquest Hospitality, LLC* to support its

9  arguments that S.C. failed to differentiate between the defendants, failed to allege sufficient

10 knowledge about sex trafficking, and failed to establish an agency relationship.  In *G.N.C.*, the

11 plaintiff alleged that there were red flags that should have put several hotel and franchisor

12 defendants on constructive notice of her trafficking. 2024 WL 4149251 at *1, 3.  The court found

13 her allegations did not differentiate knowledge of prostitution from knowledge of sex trafficking

14 and failed to attribute knowledge of her particular sex trafficking to each of the defendants. *Id.* at

15 *3-5.  Second, Hilton cites *J.R. v. Extended Stay America, Inc., et al.*  In *J.R.*, the district court

16 dismissed a TVPRA claim where the plaintiff relied on news reports about sex trafficking at the

17 defendant hotels generally and did not adequately allege a venture between the hotels and her

18 traffickers. No. 3:23-cv-00063-HES-SJH, ECF No. 122 at 9-10 (M.D. Fla. Sept. 25, 2024); ECF

19 No. 64-2 at 10-11.  Courts are divided on whether a TVPRA claim must plausibly allege the

20 defendant had constructive knowledge of the particular plaintiff being trafficked, or if they must

21 only know that the venture engaged in sex trafficking. *Compare Red Roof Inns*, 21 F.4th at 725

22 ("[T]he defendant must have either actual or constructive knowledge that the venture . . . violated

23 the TVPRA as to the plaintiff") *with G.G.*, 76 F.4th at 556-57 (acknowledging that many

ventures involve only a single victim but rejecting the argument that a plaintiff must show knowledge of a particular victim).

In contrast to these cases, S.C. has alleged sufficient facts regardless of which standard of knowledge is required. As discussed above, she has plausibly alleged that both the Hampton Inn Defendants and Hilton had actual knowledge of her trafficking. Unlike the plaintiff in *G.N.C.* who alleged only signs of prostitution, S.C. was a minor at the time, so any signs that she was engaged in commercial sex would meet the definition of trafficking under § 1591(a). Although S.C. does not specifically attribute knowledge between the two entities that controlled the Hampton Inn, she alleges a pattern of conduct that spans each of these defendants' ownership and could have put both on notice that she was being trafficked to Mohammad A.

*5. TVPRA Summary*

S.C. has plausibly alleged a TVPRA claim under beneficiary and perpetrator liability against Hilton and the Hampton Inn Defendants. S.C. has also plausibly alleged that Hilton is vicariously liable for the Hampton Inn employees' conduct through both agency and joint employer status for the TVPRA claim. Because the FAC did not allege a perpetrator theory against these defendants under § 1591(a)(1) and S.C. only raised such a theory in her response, I do not consider it. But I grant her leave to amend her complaint if she can allege facts to add such a claim. Accordingly, I deny Hilton's motion to dismiss the FAC's TVPRA claims.

**B. CAVRA**

CAVRA provides a civil remedy for persons who were injured as a victim of various crimes, including sex trafficking under 18 U.S.C. § 1591, while a minor. 18 U.S.C. § 2255(a). Because S.C.'s CAVRA claim is predicated on being a victim under § 1591, S.C. and Hilton acknowledge that the analysis is the same as her TVPRA claim. ECF Nos. 45 at 14; 40 at 17.

1 Because I deny Hilton and the Hampton Inn Defendants' motion to dismiss S.C.'s TVPRA

2 claims, I also deny their motion to dismiss S.C.'s CAVRA claim.

3 **C.  State Law Claims**

4 *1.  Personal injury from sex trafficking under NRS § 41.13965*

5 S.C. brings a claim under Nevada Revised Statutes (NRS) § 41.13965(2), which allows a

6 victim of sexual abuse or exploitation to sue a person who "knowingly benefits, financially or by

7 receiving anything of tangible value, from participation in a venture which that person knew or

8 should have known has engaged in sexual abuse or sexual exploitation of another person."

9 Hilton acknowledges that this law "was intended to mirror the federal 1595(a) standard." ECF

10 No. 40 at 18-19; Nev. Sen. Comm. on Judiciary, Minutes for Apr. 9, 2021, at 14 (replacing

11 language in section 2 of Senate Bill 203 "with federal statutory language").  But Hilton also

12 argues that this, and every other, claim under Nevada law requires proving proximate cause.

13 The Supreme Court of Nevada has not interpreted a case under NRS § 41.13965, which

14 was passed in 2021.  "Where the state's highest court has not squarely addressed an issue, [I]

15 must predict how the highest state court would decide the issue using intermediate appellate

16 court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as

17 guidance." *Judd v. Weinstein*, 967 F.3d 952, 955-56 (9th Cir. 2020) (quotation omitted).  NRS

18 § 41.13965(2) mirrors the language of 18 U.S.C. § 1595(a), which does not require showing

19 proximate cause in its text or in cases interpreting its elements. *See e.g.*, *Red Roof Inns*, 21 F.4th

20 at 726 (defining elements of a § 1595(a) beneficiary claim); *G.G.*, 76 F.4th at 553 (same).  I

21 therefore predict that the Supreme Court of Nevada would not read an additional proximate

22 cause element into NRS § 41.13965(2).  So, I deny Hilton and the Hampton Inn Defendants'

23

motion to dismiss S.C.'s § 41.13965(2) claims for the same reasons I deny their motion to
dismiss S.C.'s TVPRA claims.

### 2.  Profiting from human trafficking under NRS § 41.1399

S.C. also brings a claim under NRS § 41.1399(1), which allows victims of certain state
and federal criminal human trafficking laws to sue "any person who caused, was responsible for
or profited from the human trafficking."  One of the listed predicate crimes is 18 U.S.C. § 1591.
NRS § 41.1399(10)(a).  Hilton acknowledges that this claim is derivative of S.C.'s TVPRA
claim but argues that all predicate acts under § 41.1399 require a showing of specific intent. ECF
No. 40 at 19.  S.C. responds by arguing that the statute does not explicitly require specific intent
and that equitable remedies such as disgorgement of profits do not require such a showing.

In support of its argument, Hilton relies on *Ford v. State*, 262 P.3d 1123, 1127 (Nev.
2011) (en banc) and *Sharma v. State*, 56 P.3d 868, 870-72 (Nev. 2002), which required showing
specific intent to convict criminal defendants under state statutes for pandering and for aiding or
abetting attempted murder, respectively.  Those cases do not, however, interpret whether a
plaintiff under NRS § 41.1399 must prove that the defendant profiting from the plaintiff's
trafficking had the specific intent that the criminal trafficking occur.  Nor is it clear from the text
of NRS § 41.1399 if a plaintiff may bring a claim only against those who committed the
underlying offense, or if they may sue under a beneficiary theory similar to the TVPRA.

The Supreme Court of Nevada has never interpreted NRS § 41.1399.  It is unclear from
existing law whether it requires pleading specific intent to commit a predicate offense, who may
be sued, or what remedies are available.  In my discretion, "[w]hen state law issues are unclear,
[I] may certify a question to a state's highest court to obtain authoritative answers." *Potter v. City
of Lacey*, 46 F.4th 787, 791 (9th Cir. 2022) (quotation omitted).  Certification may be appropriate

1    for state law issues that carry "significant policy implications" and "will have broad application."

2    *Id.*; *Kremen v. Cohen*, 325 F.3d 1035, 1038 (9th Cir. 2003). Nevada Rule of Appellate

3    Procedure 5 permits me to certify a question of Nevada law "which may be determinative of the

4    cause then pending" in my court when "it appears to [me] there is no controlling precedent in the

5    decisions of the Supreme Court or Court of Appeals of [Nevada]." The certified question does

6    not have to resolve or conclude the entire case; it only needs to be determinative of "part of the

7    federal case." *Volvo Cars of N. Am., Inc. v. Ricci*, 137 P.3d 1161, 1164 (Nev. 2006) (en banc).

8         Given the lack of authority on point and the importance of the scope of this cause of

9    action, I am inclined to certify to the Supreme Court of Nevada the question of whether a party

10   who profited from trafficking but did not commit the underlying offense may be sued and, if so,

11   whether the defendant must have the specific intent to commit the trafficking offense. I thus

12   deny Hilton and the Hampton Inn Defendants' motion to dismiss S.C.'s claim under NRS

13   § 41.1399, and any party may move to certify questions to the Supreme Court of Nevada related

14   to this claim.

15              *3. Premises liability negligence*

16        S.C. alleges that Hilton and the Hampton Inn Defendants negligently allowed unsafe

17   conditions at the Hampton Inn by repeatedly renting rooms to Mohammad A., which caused S.C.

18   damages when he sexually abused her. To bring a negligence claim against an innkeeper in

19   Nevada, S.C. must plausibly allege "(1) duty, (2) breach, (3) proximate causation, and (4)

20   damages." *Estate of Smith v. Mahoney's Silver Nugget, Inc.*, 265 P.3d 688, 690 (Nev. 2011). By

21   statute, innkeepers in Nevada are liable for injury to a patron or other person on the premises

22   caused by a person who is not a hotel employee if: "the wrongful act which caused the death or

23   injury was foreseeable," and the innkeeper failed to take reasonable precautions against the

foreseeable wrongful act. NRS § 651.015(2).  A wrongful act may be foreseeable by either "(a) [t]he owner or keeper fail[ing] to exercise due care for the safety of the patron or other person on the premises; or (b) [p]rior incidents of similar wrongful acts occurred on the premises and the owner or keeper had notice or knowledge of those incidents." *Id.* § 651.015(3).

S.C. has plausibly alleged a premises liability claim against the Hampton Inn Defendants. The Hampton Inn Defendants had a duty to protect S.C. on their premises from the reasonably foreseeable actions of Mohammad A.  S.C. has plausibly alleged that Mohammad A.'s sexual abuse of S.C. was foreseeable because he rented a room twice per week at the Hampton Inn for that purpose and the Hampton Inn's employees allegedly knew or should have known Mohammad A. was sexually abusing S.C.  The Hampton Inn breached that duty by continuing to rent rooms to Mohammad A. twice per week.  S.C. has alleged that she suffered physical and psychological injuries as a result of her sexual exploitation at the Hampton Inn, and it is reasonable to infer that some of these damages are fairly traceable to Mohammad A.'s frequent abuse.

S.C. has not plausibly alleged any direct liability against Hilton for the unsafe premises at the Hampton Inn.  She acknowledges that Hilton's liability for this claim, if any, is based on agency. ECF No. 45 at 19.  Her premises liability claim is based on the same aspects of the Hampton Inn's operation as her TVPRA claim, which she plausibly alleges were sufficiently controlled by Hilton to establish an agency relationship.  Specifically, she relies on the reservation system and improper sex-trafficking training that caused the Hampton Inn employees to fail to use due care when renting rooms to Mohammad A.  Thus, I deny Hilton and the Hampton Inn Defendants' motion to dismiss S.C.'s premises liability negligence claims.

*4.  IIED*

S.C. also brings a claim against the Hampton Inn Defendants for IIED, and against Hilton through her agency theories.  Hilton argues that, although the traffickers' conduct was extreme and outrageous, nothing in the FAC describes extreme and outrageous conduct by the Hampton Inn or its employees.  S.C. argues that a jury must evaluate whether behavior is extreme and outrageous based on community standards, and that knowingly renting rooms to Mohammad A. plausibly rises to those standards.

To state an IIED claim under Nevada law, a plaintiff must plausibly allege that (1) the Hampton Inn defendants' conduct was extreme and outrageous; (2) the Hampton Inn Defendants either intended or recklessly disregarded causing S.C. emotional distress; (3) S.C. suffered severe or extreme emotional distress; and (4) proximate cause. *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983).  Whether conduct constitutes extreme outrage is a question for a jury to determine, "considering prevailing circumstances, contemporary attitudes and [S.C.'s] own susceptibility." *Posadas v. City of Reno*, 851 P.2d 438, 444 (Nev. 1993) (quotation omitted).

S.C. plausibly alleges that the Hampton Inn Defendants engaged in extreme and outrageous conduct by repeatedly renting a room to Mohammad A. despite knowing or recklessly disregarding the fact that he would use that room to sexually abuse S.C.  It is plausible to infer that a victim of child sexual abuse would suffer severe emotional distress from that abuse and S.C. plausibly alleges such distress.  And but for the Hampton Inn providing Mohammad A. and the individual traffickers with a consistent forum for their conduct, it is plausible that S.C would not have suffered the emotional distress.  As discussed above, because S.C. plausibly alleges that Hilton controlled the aspects of the Hampton Inn's operation relating to room reservations and detecting and reporting sex trafficking, the Hampton Inn and its employees may

plausibly be considered Hilton's agents for the relevant conduct in this claim. I therefore deny Hilton's motion to dismiss S.C.'s IIED claim.

### 5. Statute of limitations

Hilton argues that S.C.'s premises liability and IIED claims are barred by the statute of limitations because her original complaint implies that she likely turned 18 in "mid-2021" and she filed her lawsuit on November 13, 2023. *See* ECF No. 1-1 at 5-6. The FAC does not state when S.C. turned 18, but S.C. does not dispute Hilton's assertion. ECF No. 45 at 17-18. Rather, she argues that her claims should proceed because the limitation periods are equitably tolled by her mental distress.

I may grant a motion to dismiss a complaint as time-barred only if the running of the statute of limitation is "apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (quotation omitted). Thus, I cannot dismiss a complaint unless the plaintiff undoubtedly fails to allege any set of facts proving the timeliness of their claim. *United States v. Page*, 116 F.4th 822, 825-26 (9th Cir. 2024). Because it is not clear from the face of the FAC when S.C. turned 18, I cannot say without doubt that S.C.'s negligence and IIED claims are untimely. So, I deny Hilton's motion to dismiss these claims as untimely.

## III. CONCLUSION

I THEREFORE ORDER that defendant Hilton Franchise Holding LLC's motion to dismiss (**ECF No. 40**) and the joinders thereto (**ECF Nos. 41, 60**) are **DENIED**.

I FURTHER ORDER that Hilton Franchise Holding LLC's motions for leave to file supplemental authority (**ECF Nos. 63, 64**) are **GRANTED**.

I FURTHER ORDER that by December 13, 2024, S.C. may file a second amended complaint to bring a perpetrator claim under 18 U.S.C. § 1591(a)(1). If S.C. does not amend, her remaining claims will proceed.

DATED this 12th day of November, 2024.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE