**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| Sarah C., pseudonymously,<br><br>        Plaintiff,<br><br>v.<br><br>Hilton Franchise Holding, LLC, et al.,<br><br>        Defendants. | Case No. 2:23-cv-02037-APG-DJA<br><br>**Order** |

Between mid-2019 and late-2020, Defendants Eric Washington, Gregory Stephens, Alexandra Marquez Salcedo, and Brandon McCullough (collectively, the "Individual Defendants") allegedly coerced the 16-to-17-year-old Plaintiff Sarah C. into having commercial sex with customers at a Hampton Inn over 150 times. Plaintiff alleges that two-thirds of those encounters were with the same customer, a man Plaintiff refers to using the pseudonym "Mohammad A." Plaintiff sues the Individual Defendants and Defendants N.W.H. Ltd., SSJV Hospitality LLC, and Hilton Franchise Holding LLC (the former owner, current owner, and franchisor of the Hampton Inn, respectively, and to which the Court refers collectively as the "Hotel Defendants") for damages. She alleges claims arising under the federal Trafficking Victims Protection Reauthorization Act ("TVPRA") and Child Abuse Victims Rights Act ("CAVRA"); Nevada's statutes creating causes of action for personal injury and human trafficking; and common law claims for negligence and intentional infliction of emotional distress. Plaintiff settled out of court with Mohammad A., and does not name him as a defendant in this action.

Plaintiff moves for a protective order that would do four things: (1) allow her to proceed under a pseudonym; (2) require Defendants[1] to give Plaintiff thirty days' notice before they contact or reveal her true identity to her alleged traffickers and/or their affiliates; (3) allow Plaintiff to disclose her settlement agreement with Mohammad A. under an "Attorney's Eyes Only" ("AEO") provision; and (4) limit the individuals to whom the parties could disclose Mohammad A.'s true identity. (ECF No. 81). Mohammad A., as an intervenor, also moves the Court to adopt the last two provisions of Plaintiff's proposed protective order. (ECF No. 90). The Hotel Defendants oppose both motions.[2] (ECF Nos. 84, 91).

The Court finds that Plaintiff has demonstrated good cause to warrant proceeding under a pseudonym during the pre-summary judgment phase of her case, but not her entire case. Plaintiff has also shown good cause to justify requiring the Defendants to give her thirty-days' notice before revealing her identity to her alleged traffickers and/or their affiliates. But she has not shown good cause to justify the Court requiring the Defendants to give her thirty-days' notice each time they contact those traffickers and/or affiliates. The Court also lacks sufficient information to find that either Plaintiff or Mohammad A. have shown good cause to protect Mohammad A.'s identity or for them to disclose their settlement agreement under an AEO provision. So, the Court grants in part and denies in part Plaintiff's motion for protective order. It denies Mohammad A.'s motion for protective order in its entirety without prejudice. The Court will require the parties to meet and confer and submit a stipulated protective order containing the language the Court has approved in this order.

**I.      Legal standard.**

Under Federal Rule of Civil Procedure 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense..." For good cause to exist, the party seeking protection bears the burden of showing

---

[1] Plaintiff's proposed protective order language does not differentiate between the Hotel Defendants and the Individual Defendants.

[2] The Individual Defendants have not appeared in this action.

specific prejudice or harm will result if no protective order is granted. *See Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir.1992) (holding that "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test"); *see San Jose Mercury News, Inc.*, 187 F.3d 1096, 1103 (9th Cir. 1999) (holding that to gain a protective order the party must make "particularized showing of good cause with respect to any individual document"). If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary. *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp*, 307 F.3d 1206, 1210-11 (9th Cir. 2002).

## II. Discussion.

### A. Plaintiff proceeding pseudonymously.

Plaintiff and the Hotel Defendants agree that the Court should permit Plaintiff to proceed under a pseudonym, although the Hotel Defendants assert that the Court should only allow her to do so in the pre-summary judgment stage. (ECF Nos. 81, 84). Plaintiff did not challenge the Hotel Defendants' pre-summary judgment limitation in any reply. So, the Court grants Plaintiff's motion for protective order in part and will allow Plaintiff to proceed under a pseudonym until the parties' dispositive motions deadline.

In deciding whether to permit a party's use of a fictitious name, the district court must weigh the need for anonymity against any "prejudice to the opposing party and the public's interest in knowing the party's identity." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000). When a party requests to proceed using a pseudonym, the Court balances the following factors against the general presumption that parties' identities are public: (1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fears; and (3) the anonymous party's vulnerability to such retaliation. *Id.* The Ninth Circuit has recognized that "the balance between a party's need for anonymity and the interests weighing in favor of open judicial proceedings may change as the litigation progresses. *Id.* at 1069.

Here, having considered the *Advanced Textile* factors, and because the parties agree, the Court grants Plaintiff's motion for protective order in part and will allow Plaintiff to proceed

under a pseudonym in the pre-summary judgment phase of the litigation. This order will expire after the parties' dispositive motions deadline. After that deadline, Plaintiff will need to renew her motion to proceed pseudonymously should she wish to continue litigating this case using a pseudonym.

### B. Thirty-days' notice provision.

Plaintiff proposes the following provision in her proposed protective order:

> The parties may disclose Plaintiff's and/or Mohammad A.'s True Identity to the following:
> …
> m) Plaintiff's known trafficker(s) or Plaintiff's trafficker(s) known affiliate(s) and their counsel, but only to the extent Plaintiff's True Identity will assist the witness in recalling, relating or explaining facts; provided, however, that before contacting a trafficker or affiliate, Defendants shall provide Plaintiff 30 days' written notice by email to her counsel, stating the names of the individuals to be contacted. Defendants agree that they will under no circumstances reveal to a trafficker or affiliate the Plaintiff's whereabouts or contact information, or the whereabouts or contact information of Plaintiff's family members.

(ECF No. 81-2 at 2, 5).

The Hotel Defendants propose the following provision instead:

> The Parties may disclose Plaintiff's True Identity to the following:
> …
> k) Any potential, anticipated, or actual fact witness, and their counsel, but only to the extent Plaintiff's True Identity will assist the witness in recalling, relating or explaining facts.

(ECF No. 84-1 at 4).

Notably, Plaintiff's proposed protective order language would require Defendants to give Plaintiff thirty-days' advance any time they *contact* the Plaintiff's alleged traffickers—an ongoing obligation. But her motion asks that the Court grant her thirty-days' notice before Defendants *reveal her identity* to those alleged traffickers or affiliates—a one-time obligation. (ECF No. 81 at 5). Plaintiff argues that the Defendants should give her thirty-days' notice before revealing her identity to her traffickers—certain of whom are the Individual Defendants—so that she may "take additional steps to protect herself, her whereabouts, and her home." (*Id.*). Plaintiff does not

address the discrepancy between the protections she requests in her motion and those she requests in her proposed protective order. She also does not explain why her proposed "contact" notice is necessary so that she may protect herself.

The Hotel Defendants oppose Plaintiff's proposed requirement that they give her thirty-days' notice before contacting the alleged traffickers, arguing that doing so would give Plaintiff insight into their work-product protected information. (ECF No. 84 at 3-6). The Hotel Defendants argue that Plaintiff could simply take protective measures now, instead of waiting to receive thirty-days' notice, because she already knows, and agrees, that the Hotel Defendants will disclose her identity to her traffickers. (*Id.*). The Hotel Defendants add that they have no intention of revealing Plaintiff's address or family members to the alleged traffickers and have even included language in their proposed protective order that would restrict them from doing so, obviating certain portions of Plaintiff's proposed protective order. (*Id.*).

In her motion, Plaintiff cites the Southern District of Ohio's decision in *Doe v. Red Roof Inns*, for the proposition that the notice requirement she suggests is less restrictive than other protections courts have provided to plaintiff victims in TVPRA cases. *A.M.G. v. Red Roof Inns*, No. 2:23-cv-04195, 2024 U.S. Dist. LEXIS 191721, at *8 (S.D. Ohio Oct. 22, 2024). There, the court entered a protective order requiring the defendants to provide "7 days['] notice to the Plaintiff of the intention to contact the trafficker [and/or the trafficker's known associates] to permit Plaintiff to seek further protection from the Court should it be necessary." *Id.* at *3. However, the court did not differentiate between the defendants contacting the traffickers and revealing the plaintiff's identity to those traffickers.

Other courts deciding whether to impose protective orders in TVPRA cases have distinguished between contacting traffickers and revealing a plaintiff's identity, citing defendants' work product concerns. In *M.L. v. Craigslist, Inc.*—a Western District of Washington decision on which the *Red Roof Inns* court relied—defendants objected to a magistrate judge's protective order requiring them to seek a court order before disclosing the plaintiff's identity. *M.L. v. Craigslist Inc.*, No. C19-6153, 2020 WL 5701835, at *5 (W.D. Wash. Sept. 24, 2020). The district judge did not find the defendants' objections that the protective order would violate their

work product to be persuasive because the "[d]efendants do not have to disclose to the Court and to Plaintiff every time they seek to interview Plaintiff's trafficker(s) or the traffickers' affiliate(s)." *Id.* at *9. The district judge upheld the protective order language. *Id.* at *10. Similarly, in crafting protective orders in TVPRA cases, the Northern District of California and the Northern District of New York have both declined to require defendants to notify the plaintiff each time before contacting the plaintiff's traffickers. *J.C. v. Choice Hotels International, Inc.*, No. 20-cv-00155-WHO, 2021 WL 1146406, at *5-6 (N.D. Cal. Mar. 4, 2021) (explaining that the plaintiff failed "to show good cause for an advance notice provision that would override defendants' legitimate work-product confidentiality concerns"); *V.G. v. G6 Hospitality, LLC*, No. 1:19-cv-1520 (FJS/CFH), 2021 WL 6776250, at *6-8 (N.D. New York July 12, 2021) (explaining that "[p]laintiff has failed to demonstrate good cause as to why she faces a specific risk of harm where defendants are contacting the alleged trafficker or his associates and not revealing her identity").

Here, the Court declines to impose Plaintiff's proposed protective order language, which would require Defendants to give her advance notice every time they contact her alleged traffickers and their affiliates. But the Court will require the parties' stipulated protective order to contain language requiring Defendants to give Plaintiff thirty-days' advance notice before revealing her identity to those alleged traffickers and affiliates. While Plaintiff relies on *Doe v. Red Roof Inns*, that case is distinguishable because the court there did not address the differences between contacting the alleged traffickers and revealing the plaintiff's identity to those alleged traffickers. So, *Doe v. Red Roof Inns*, is only marginally helpful to this Court's analysis.

Instead, *M.L. v. Craigslist*, *J.C. v. Choice Hotels*, and *V.G. v. G6 Hospitality*, are more on point and more persuasive. In *M.L.*, the defendants raised the same work product concerns that the Hotel Defendants do here. But, unlike the protective order language that Plaintiff proposes here—which would require Defendants to tell her every time they contact her alleged traffickers—in *M.L.* the protective order only required the defendants to tell the plaintiff when they revealed her identity. So, *M.L.* persuasively stands for the proposition that protective order language that does not require a defendant to reveal each time they contact the alleged traffickers,

just when they reveal the plaintiff's identity, balances the plaintiff's safety concerns with the defendant's work product concerns. *J.C.* and *V.G.* also stand for this proposition. Like the court in *J.C.*, this Court also finds that Plaintiff has not shown good cause for the advance notice provision in her proposed protective order that would outweigh Defendants' legitimate work product confidentiality concerns. And like the court in *V.G.*, this Court also finds that Plaintiff has not demonstrated what specific harm she would face from Defendants contacting her alleged traffickers after they have already revealed her identity. So, the Court will require the parties' stipulated protective order to contain language only requiring Defendants to give Plaintiff thirty-days' notice before revealing her identity to her alleged traffickers and/or their affiliates.

    **C.**    ***Limiting disclosure of Mohammad A.'s true identity and designating the settlement agreement between Plaintiff and Mohammad A. "Attorney's Eyes Only."***

The Court denies Plaintiff and Mohammad A.'s request that the Court limit disclosure of Mohammad A.'s true identity. It also denies their request to designate their settlement agreement AEO. The Court denies these requests without prejudice for three reasons.

First, the contours of the protective order Plaintiff and Mohammad A. seek are not clear, making it impossible for the Court to determine whether Plaintiff and Mohammad A. have justified the order they seek. While Plaintiff's proposed protective order includes language protecting Mohammad A.'s identity, it does not contain an AEO provision. And the parties appear to have different ideas of what the AEO provision will mean. (ECF No. 81 at 2) (Plaintiff's brief, explaining that she moves "for a protective order limiting disclosure of the agreement to 'Attorney's Eyes Only…"); (ECF No. 90 at 6) (Mohammad A.'s brief stating that he "is *not* seeking to preclude *Defendants* from receiving the settlement agreement. Rather, Mohammad A., and the Plaintiff, are seeking to limit its *further dissemination* by Defendants' attorneys…") (emphasis added). The parties often also appear to conflate the request to keep Mohammad A.'s identity private with the request for an AEO provision. (ECF No. 81 at 7) (Plaintiff's brief stating that "Plaintiff is seeking to have Mohammad A.'s identity be kept off the public docket, and for it to be kept "Attorneys Eyes Only."); (ECF No. 84 at 9) (Hotel

1  Defendants' response to Plaintiff's brief, stating that, "Plaintiff's proposed Attorneys' Eyes Only
2  provision would hinder Defendants' ability to defend against allegations relating to Mohammad
3  A.  For example, Defendants' counsel could not engage in meaningful third-party discovery from
4  this trafficker's associates…and they could no longer share his identity with their clients or their
5  own associates or witnesses"[3]).

6  Second, Mohammad A. and the Hotel Defendants often cite to cases that address the
7  standard for sealing documents, rather than the standard governing protective orders.  (ECF No.
8  90 at 5) (Mohammad A.'s brief stating that "many courts have found it appropriate to preserve the
9  confidentiality of settlement agreements, such as by issuing protective orders or allowing the
10 filing of such agreements under seal."); (ECF No. 91 at 5) (Hotel Defendants' response to
11 Mohammad A's brief, stating that "Mohammad A.'s general litany of cases standing for the
12 generic proposition that settlement agreements *may* be sealed does not, without more, offer reason
13 to shield the information from other non-settling parties to the case or even the public at large.")
14 (internal quotations omitted, cleaned up).  But different standards apply to a motion for protective
15 order than apply to a motion to seal.  *Compare* Fed. R. Civ. P. 26(c) *with Kamakana v. City and*
16 *County of Honolulu*, 447 F.3d 1172, 1178-80 (9th Cir. 2006).  And that a party has designated a
17 document "confidential" under a protective order does not automatically mean that the party can
18 then seal the document when filed.  *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122,
19 1133 (9th Cir. 2003); *see also Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir.
20 1992).

21 Third, the Court is without sufficient information to conduct the two-step analysis it must
22 undertake to determine if a protective order is appropriate.  At the first step of that test, the Court
23 must determine if Plaintiff and Mohammad A. have carried their burden of showing that specific
24 harm or prejudice will result if the Court does not grant a protective order.  Plaintiff and
25 Mohammad A. both assert that they will face the particularized harm of potentially violating the

---

[3] This conflates the AEO designation with the provision purporting to protect Mohammad A.'s identity because Plaintiff's proposed protective order would *allow* the Hotel Defendants to know Mohammad A.'s identity and to disclose his identity to fact witnesses with certain restrictions.

terms of their settlement agreement without the protective order they seek. But neither Plaintiff nor Mohammad A. describe those terms, how those terms bind them, or why those terms bind them differently with respect to the actual agreement (for which they seek an AEO provision) and with respect to Mohammad A.'s identity (for which they seek limited disclosure). Neither Plaintiff nor Mohammad A. assert that the settlement agreement prohibits them from describing those terms. Even if it did, neither Plaintiff nor Mohammad A. have provided the settlement agreement *in camera*.[4] So, the Court is without sufficient information to determine if Plaintiff and Mohammad A. will face the particularized harm of violating their settlement agreement absent the Court granting a protective order.

On the other hand, Mohammad A. presents a separate particularized harm he asserts he will face if the Court does not grant a protective order: the fact that the parties in this case may raise allegations against him using his true identity, against which allegations he will be unable to defend himself as a non-party to this case. The Court finds that this is a particularized harm. However, the Court is still without sufficient information to perform the second step of its analysis.

At the second step, the Court must balance the public and private interests to decide whether a protective order is necessary. The Hotel Defendants raise two bases why they believe the public interest outweighs Mohammad A.'s private interest: (1) that the public has an interest in knowing the identity of a person who might sexually abuse children; and (2) that Nevada outlaws any confidentiality provision in Plaintiff and Mohammad A.'s settlement agreement. The Court does not need the terms of Plaintiff and Mohammad A.'s settlement agreement to weigh the first basis the Hotel Defendants raise. But it does need that language to weigh the second. And the Court declines to conduct an incomplete analysis here.

---

[4] Mohammad A. has offered to provide the settlement agreement *in camera*. However, given the lack of clarity regarding the AEO provision and the incongruities in the parties' briefs, even if the Court deferred decision on the motions for protective order until it received the settlement agreement *in camera*, it would still be unable to effectively determine the motions.

The second basis for the Hotel Defendants' argument is that Nevada Revised Statute § 10.195 outlaws the confidentiality agreement in Plaintiff and Mohammad A.'s settlement agreement. That statute prohibits settlement agreements from containing provisions that would prohibit a party from "disclosing factual information relating to a claim in a civil or administrative action if the claim relates to…[c]onduct that if criminal liability were imposed would constitute a sexual offense pursuant to NRS 179D.097…" Nev. Rev. Stat. § 10.195. But, while this statute appears to evidence a general public interest, the Court cannot determine the weight of that public interest in this case if it cannot determine how NRS § 10.195 relates to the specific terms of Plaintiff and Mohammad A.'s settlement agreement.

So, the Court will deny Plaintiff's motion for protective order in part as it relates to her request for language protecting Mohammad A.'s identity and Plaintiff and Mohammad A.'s settlement agreement. The Court will also deny Mohammad A.'s motion for protective order. The Court denies these motions without prejudice to Plaintiff and Mohammad A. raising them again if they can address the Court's concerns in this order. Should Plaintiff and/or Mohammad A. seek a protective order over these categories of information again, the Court will require further briefing regarding Nevada Revised Statute § 10.195 and its effect on the settlement agreement and will require Plaintiff and Mohammad A. to submit their settlement agreement *in camera*.

///

///

///

**IT IS THEREFORE ORDERED** that Plaintiff's motion for protective order (ECF No. 81) is **granted in part and denied in part.** It is granted in part insofar as the parties must include the following provisions in their stipulated protective order: (1) a provision allowing Plaintiff to proceed pseudonymously until the dispositive motion deadline, after which deadline she will need to renew her request to proceed pseudonymously; (2) a provision requiring the Defendants to give Plaintiff thirty-days' notice before informing her alleged traffickers and/or their affiliates of Plaintiff's true identity. It is denied in all other respects.

**IT IS FURTHER ORDERED** that Mohammad A.'s motion for a protective order (ECF No. 90) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that, on or before **July 28, 2025**, the parties must meet and confer and submit to the Court a stipulated protective order that contains the provisions that the Court has approved herein.

DATED: June 27, 2025

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE